595 F.2d 533
 19 Fair Empl.Prac.Cas. 137, 19 Empl. Prac.
Dec. P 8980,
1 A.D. Cases 49
 Michael E. COLEMAN, Plaintiff-Appellant,
v.
George DARDEN, Individually and in his representative
capacity as Regional Director of the Denver Litigation
Center for the Equal Employment Opportunity Commission,
Annie Clay, Individually and in her representative capacity
as Administrative Officer for the Equal Employment
Opportunity Commission, and John Ford, Individually and in
his representative capacity as Senior Research Analyst for
the Equal Employment Opportunity Commission, Ethel Bent
Walsh, Individually and as Acting Chairman of the Equal
Employment Opportunity Commission, Defendants-Appellees.
 No. 77-1133.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted Aug. 10, 1978.
Decided Feb. 23, 1979.
Rehearing Denied May 17, 1979.
 
 1
 Anthony F. Renzo of Engdahl & Renzo, P. C., Denver, Colo., for plaintiff-appellant.
 
 
 2
 Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Beatrice Rosenberg, Asst. Gen. Counsel, Sharyn L. Danch, Atty., E. E. O. C., Washington, D. C., for defendants-appellees.
 
 
 3
 Before SETH and LOGAN, Circuit Judges, and COOK, District Judge*.
 
 
 4
 H. DALE COOK, District Judge.
 
 
 5
 This case is before us on appeal from a final order of the United States District Court for the District of Colorado granting summary judgment in favor of the defendants-appellees (hereinafter referred to as "defendants"). In his complaint, the plaintiff-appellant, Michael E. Coleman (Coleman), alleged, Inter alia, that the defendants had discriminated against him because of a physical handicap in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 Et seq. and the Fifth Amendment to the United States Constitution. He sought review of the defendants' actions under those provisions and also under the Administrative Procedure Act, 5 U.S.C. § 701 Et seq. The District Court entered judgment in behalf of the defendants, holding that the Rehabilitation Act of 1973 did not create an implied private cause of action and that the undisputed facts did not demonstrate a violation of Coleman's Fifth Amendment Rights. This appeal followed.
 
 
 6
 At the time of the acts complained of, Coleman was a twenty-nine (29) year-old white male who became totally blind in 1960. Despite this handicap, he received an undergraduate degree from Louisiana State University in 1970 and a law degree from the University of Denver in 1974. From January 1, 1974 to January 1, 1975, Coleman was employed as a part-time case analyst by the Denver Regional Office of the General Counsel, Equal Employment Opportunity Commission (EEOC). Beginning on January 1, 1975, Coleman became a law clerk in the same office. In both positions, he was provided the services of a part-time reader, and his performance was entirely satisfactory. At the time he accepted the law clerk position, Coleman understood that he would be terminated if he was not admitted to the bar within fourteen (14) months. He did not gain the requisite bar admission and was terminated on March 1, 1976. The appropriateness of that termination has not been challenged.
 
 
 7
 In November of 1975, anticipating his termination, Coleman applied for a position as a research analyst in the Denver office of the EEOC. He was one of seven applicants whose names were referred to the Denver office for consideration. Defendants Clay and Ford were assigned the task of reviewing the applications and filling the position. They did not hire Coleman, choosing instead a female applicant who is not visually handicapped. Coleman filed a grievance with the EEOC but was advised that because there was no established procedure for handling grievances based upon handicap discrimination, his complaint would not be investigated. Following his unsuccessful attempt to proceed administratively, Coleman filed this suit in the District Court.
 
 
 8
 In view of the issues raised in this appeal, it is necessary to examine the primary duties and responsibilities of the jobs in issue, as set forth in the applicable position descriptions. The position of law clerk, from which Coleman was terminated for failure to gain admission to the bar, included the following duties and responsibilities: preparing drafts of opinion letters involving interpretations of Title VII; reviewing contracts for legal sufficiency; providing legal counsel and assistance in the preparation of briefs; drafting administrative regulations and examining regulations for conformance with the requirements of Title VII. (R.135-139)
 
 
 9
 The position description for research analyst, the job for which Coleman was not selected, reveals the following duties and responsibilities, among others: assisting in the analysis of the litigative potential of cases; researching and analyzing relevant case precedents and statistical and socio-economic data; reviewing and preparing material required to aid the attorney in litigating cases; developing work sheets for compilation of statistical data; interpreting computer formats and printouts; compiling and analyzing labor force data; evaluating seniority systems and testing patterns; assisting in the preparation of materials required for discovery and aiding in the preparation of remedial orders. (R.48-53)
 
 
 10
 There is a third position which, although not directly in issue here, is relevant in view of the claims made by Coleman. That position is paralegal specialist, the duties and responsibilities of which included the following: researching and analyzing legal decisions; compiling substantive information on statutes and legal instruments; preparing cases for civil litigation, including the collection, analysis and evaluation of evidence; analyzing facts and legal questions presented by personnel administering specific Federal laws and performing other paralegal duties requiring discretion and independent judgment in the application of specialized knowledge of particular laws. (R.92-93) The position description for paralegal specialist also contained the following physical requirement: "Ability to read without strain printed material the size of typewritten characters is required, corrective lenses permitted." (R.96) Neither the law clerk position nor the research analyst position specifically required the ability to read. In March of 1976, after the research analyst position in issue had been filled, that position was reclassified as a paralegal specialist position. The two positions thereby became one, and the position description became the same as that of the former research analyst. (R.130-134)
 
 
 11
 In assessing motions for summary judgment, we must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues, Stevens v. Barnard, 512 F.2d 876 (10th Cir. 1975), and pleadings and other documentary evidence must be construed liberally in favor of the party opposing the motion. Adickes v. S. H. Kress & Co.,398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Webb v. Allstate Life Insurance Co., 536 F.2d 336 (10th Cir. 1976); Stevens v. Barnard, supra. The burden is upon the moving party to show, beyond a reasonable doubt, the absence of a genuine issue as to any material fact. Adickes v. S. H. Kress & Co., supra; Mogle v. Sevier County School District, 540 F.2d 478 (10th Cir. 1976); Stevens v. Barnard, supra. However, under Rule 56(e) of the Federal Rules of Civil Procedure, once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. Adickes v. S. H. Kress & Co., supra; First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), Rehearing denied 393 U.S. 901, 89 S.Ct. 63, 20 L.Ed.2d 569 (1968); Brown v. Ford Motor Company, 494 F.2d 418 (10th Cir. 1974).
 
 FIFTH AMENDMENT CLAIM
 
 12
 Coleman contends that the defendants deprived him of his rights to due process under the Fifth Amendment by creating an irrebuttable, or conclusive, presumption that he could not satisfactorily perform the job of research analyst because of his physical handicap. He claims that he could have performed the job with the assistance of a reader and that because of his previous satisfactory performance, he should have been given the opportunity to demonstrate his ability to perform the job of research analyst.
 
 
 13
 Statutes creating permanent irrebuttable presumptions, which are neither necessarily nor universally true, are disfavored under both the Fifth and Fourteenth Amendments, because they preclude individualized determination of the facts upon which substantial rights or obligations may depend. Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). For instance, in Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), the Supreme Court invalidated a school board rule which presumed a pregnant teacher physically incapable of teaching for several months before and after the birth of her child; Vlandis v. Kline, supra, involved a statutory presumption of residency for purposes of college tuition; Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), involved a statute which presumed an unwed father unfit to raise his own children. We believe that Coleman's claim based upon the doctrine of conclusive presumptions fails for several reasons.
 
 
 14
 As noted above, the primary evil of conclusive, or irrebuttable, presumptions is their failure to provide an opportunity for an individualized determination of the relevant facts. In support of their motion for summary judgment, the defendants submitted affidavits from the person responsible for filling the research analyst position. Those affidavits reveal that Coleman's name was among seven referred to the Denver office for consideration for that position. (R.46) The selection panel had before it Coleman's application, (R.120-121) which did not reveal his visual handicap, and his latest performance evaluation. (R.81; 87) The panel discussed and considered the strengths and weaknesses of each candidate before making its selection. (R.116) In opposition to those affidavits, Coleman relied upon the allegations in his complaint that the defendants disqualified him from any consideration for the position because of his visual handicap. However, in view of the affidavits filed by the defendants, those allegations were insufficient to raise a factual issue. The unrebutted evidence is that Coleman's application was given the individual consideration lacking in the ordinary conclusive presumption situation.
 
 
 15
 Furthermore, cases invalidating conclusive presumptions, including those cases relied upon by Coleman, have done so in the context of a statute (Vlandis v. Kline, supra; Stanley v. Illinois, supra; Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932); Schlesinger v. Wisconsin, 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557 (1926)), a policy (Gurmankin v. Costanzo, 556 F.2d 184 (3rd Cir. 1977); Duran v. City of Tampa, 430 F.Supp. 75 (M.D.Fla.1977)), a rule (Cleveland Board of Education v. LaFleur, supra), or a constitutional provision (Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965)) applicable to a designated, identifiable class of persons. There is no evidence in the record of this case, and, in fact, no allegations in the complaint, that the defendants excluded blind persons as a class from consideration for the position of research analyst, or for any other position, or that any statute, policy or rule operated to exclude that class of persons. Coleman alleges only that he was personally and individually excluded from consideration because of his visual handicap.
 
 
 16
 Even if the facts of this case might otherwise justify the application of the concept of irrebuttable presumption, the opinion of the United States Supreme Court in Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), indicates that the nature of Coleman's interest might render the concept inapplicable in this case. In Salfi, which involved a statutory presumption under the Social Security Act, the Court found that the social welfare programs involved did not ". . . involve affirmative Government action which seriously curtails important liberties cognizable under the Constitution," 422 U.S. at 785, 95 S.Ct. at 2476, and that the presumption was rationally related to a legitimate legislative goal. The Court held that, under the circumstances, no individualized determinations were necessary and distinguished the situation before it from that present in Stanley v. Illinois, supra, in which the Court had characterized the rights to conceive and raise one's children as basic civil rights of man and as ". . . rights far more precious . . . than property rights." 405 U.S. at 651, 92 S.Ct. at 1212. The interest of the plaintiff in this case is closer to a property right than to one of the "important liberties cognizable under the Constitution," and the conclusive presumption doctrine might well be inapplicable to the facts of this case. See Mogle v. Sevier County School District, supra, in which this Court rejected a conclusive presumption argument in an employment situation somewhat similar to the one present in this case.
 
 
 17
 In conclusion, we do not believe that the conclusive presumption doctrine was intended to apply to a factual situation of the type now before us. Whenever a person seeking employment is rejected on the basis of an application, there is necessarily a "presumption" that he would be unable to perform the job as satisfactorily as the person hired. Such an unsuccessful applicant could always contend that he should be permitted an opportunity to prove that he could adequately perform the job, despite his apparent lack of qualifications. Merely because such "presumptions" are a fact of business life does not mean that "trial periods" should be required for all, or even all handicapped, applicants, and certainly not if an applicant's qualifications are individually considered in relation to legitimate job requirements. The undisputed evidence in this case is that Coleman was given such individual consideration.
 
 
 18
 Aside from the inapplicability of the conclusive presumption doctrine, we do not feel that Coleman's interest rises to the level of that protected by the Fifth Amendment. The requirements of procedural due process apply only to the deprivation of those liberty and property interests encompassed by the Fifth and Fourteenth Amendments. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). There is no constitutionally protected right to government employment. Talbot v. Pyke, 533 F.2d 331 (6th Cir. 1976); Orr v. Trinter, 444 F.2d 128 (6th Cir. 1971), Cert. denied, 408 U.S. 943, 92 S.Ct. 2847, 33 L.Ed.2d 767 (1972).
 
 
 19
 To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
 
 
 20
 Board of Regents v. Roth, supra, 408 U.S. at 577, 92 S.Ct. at 2709. Coleman has not demonstrated any legitimate claim of entitlement to the job of research analyst, and it is difficult for us to imagine how he could have done so. The record before us clearly indicates that his interest in that particular job was in the nature of a "unilateral expectation" or an "abstract need or desire." In Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), the Supreme Court refused to extend Fifth Amendment protection to one whose employment was effectively terminated by the actions of the United States Government and whose property interest was therefore far more significant than Coleman's. The petitioner in that case had been employed on a military installation by a private restaurant under contract with the Federal government. The commanding officer of the installation revoked the petitioner's right to enter the premises for failure to meet the security requirements. The petitioner contended that she had been denied due process under the Fifth Amendment. The Court found that her interest was not the right to follow a chosen trade or profession and that she was entirely free to obtain any type of job with any employer; "(a)ll that was denied her was the opportunity to work at one isolated and specific military installation." Id., 367 U.S. at 896, 81 S.Ct. at 1749. The Court also noted that the government's action had not operated to bestow a badge of disloyalty or infamy, with an attendant foreclosure from other employment opportunity. Finding that the case involved the Federal government's dispatch of its own internal affairs, the Court rejected the petitioner's Fifth Amendment claims. The reasoning of that case is equally applicable to the action of the government in the case before us. Coleman has not been deprived of any rights protected by the Fifth Amendment.
 
 STATUTORY CLAIMS
 
 21
 Coleman appeals from the District Court's conclusion that no private cause of action can be implied from the Rehabilitation Act of 1973, 29 U.S.C. § 791 Et seq., and specifically from 29 U.S.C. § 794. That section provides as follows:
 
 
 22
 No otherwise qualified handicapped individual in the United States, as defined in section 706(6) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
 
 
 23
 Every Circuit Court of Appeals which has addressed the issue has held that a private cause of action can be implied from the statute against the proper defendants. See Davis v. Southeastern Community College, 574 F.2d 1158 (4th Cir. 1978); United Handicapped Federation v. Andre, 558 F.2d 413 (8th Cir. 1977); Kampmeier v. Nyquist, 553 F.2d 296 (2nd Cir. 1977); Lloyd v. Regional Transportation Authority, 548 F.2d 1277 (7th Cir. 1977). Assuming that such a cause of action might be implied under certain circumstances, we do not believe that a Federal agency can be considered a "program or activity receiving Federal financial assistance" under § 794. See Federal Employees for Non-Smokers' Rights (FENSR) v. United States, 446 F.Supp. 181 (D.D.C.1978). Federal agencies are specifically covered by the affirmative action program requirements of 29 U.S.C. § 791(b). The regulations enacted under § 794 define "recipient" and "Federal financial assistance" in terms which, when rationally construed, do not apply to Federal agencies. 45 C.F.R. § 84.3. Accordingly, we conclude that, under the circumstances of this case, the District Court was correct in refusing to recognize an implied private cause of action against these defendants under 29 U.S.C. § 794.
 
 
 24
 Coleman also contends that he has a right to judicial review of the defendants' actions under the Administrative Procedure Act, 5 U.S.C. § 701 Et seq. Some Federal courts have permitted persons claiming Federal handicap discrimination to seek judicial review of Federal agency action under 5 U.S.C. § 702, Ryan v. Federal Deposit Insurance Corporation, 184 U.S.App.D.C. 187, 565 F.2d 762 (1977); McNutt v. Hills, 426 F.Supp. 990 (D.D.C.1977); Smith v. Fletcher, 393 F.Supp. 1366 (S.D.Tex.1975), Aff'd 559 F.2d 1014 (5th Cir. 1977), and at oral argument, the defendants conceded Coleman's right to bring a cause of action for judicial review under that statute. Under the applicable standard of review, the agency's action can be set aside only if it is "arbitrary and capricious." 5 U.S.C. § 706(2)(A); McNutt v. Hills, supra.
 
 
 25
 Review under this provision of the A.P.A. provokes inquiry whether the administrative decisions were based on a consideration of all the relevant factors and whether there was a clear error of judgment. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency. Id. The Court's function is exhausted where a rational basis is found for the agency action taken.
 
 
 26
 Sabin v. Butz, 515 F.2d 1061, 1067 (10th Cir. 1975). Before administrative action will be set aside as arbitrary and capricious, the party challenging the action must prove that it was willful and unreasoning action, without consideration and in disregard of the facts and circumstances of the case. First National Bank of Fayetteville v. Smith, 508 F.2d 1371 (8th Cir. 1974), Cert. denied, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975).
 
 
 27
 In the area of federal regulation of government employees, the governmental employer has virtually uncontrolled latitude in decisions as to hiring and firing, so long as its actions are lawful and rationally based. United States v. Testan, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); Cafeteria & Restaurant Workers Union v. McElroy, supra. As the Supreme Court said in Keim v. United States, 177 U.S. 290 at 292, 20 S.Ct. 574, at 575, 44 L.Ed. 774 (1900):
 
 
 28
 The appointment to an official position in the government, even if it be simply a clerical position, is not a mere ministerial act, but one involving the exercise of judgment. The appointing power must determine the fitness of the applicant; whether or not he is the proper one to discharge the duties of the position. Therefore it is one of those acts over which the courts have no general supervising power.
 
 
 29
 See also Bookman v. United States, 453 F.2d 1263, 197 Ct.Cl. 108 (1972). In view of the wide discretion possessed by a Federal agency and the narrow scope of review of its actions, a person challenging a Federal employment decision such as the one now before us faces a difficult task indeed. On the record now before us, we believe that the District Court was correct in refusing to substitute its judgment for that of the Federal agency.
 
 
 30
 As previously noted, the defendants considered Coleman for the position of research analyst on the basis of his application and performance evaluation and considered his strengths and weaknesses along with those of the other candidates. The research analyst position was in the competitive service. Therefore, it was necessary that the person selected to fill that position have Civil Service status or, after selection, receive certification from the Civil Service Commission. At the time of his application, Coleman did not have the required status, and the defendants were advised that his certification could not be guaranteed. The person ultimately selected to fill the position had Civil Service status at the time of her appointment. (R.47) A comparison of the job descriptions for the positions of law clerk, research analyst and paralegal specialist reveals that the duties of a law clerk were more similar to those of paralegal specialist than to those of research analyst in that both the law clerk and the paralegal specialist were required to analyze cases and give advice requiring a knowledge of laws and legal theories, while the duties of the research analyst were more in the nature of evidence preparation and data interpretation. Coleman admits that the ability to read was a reasonable requirement for the position of paralegal specialist. The defendants provided readers for visually handicapped persons in the positions of law clerk and staff attorney, who have specialized training and skills not possessed by the ordinary reader, but they concluded that in the case of a research analyst, the duties would be performed by the reader and not by the visually handicapped person. (R.116) That conclusion seems reasonable in light of the announced duties of the position. Coleman seems to argue that because the ability to read was not specifically listed as a requirement for the job of research analyst, such ability could not be considered as a factor in his qualifications. We do not believe that the discretion of a Federal agency regarding the qualifications of applicants for employment can be so narrowly confined. Undoubtedly, the defendants would also have required an applicant to possess the ability to understand the English language, although that ability was not listed as a specific job requirement. However, that does not mean, and certainly Coleman would not seriously argue, that a person alleging discrimination on the basis of national origin could demand that the agency permit him to prove that he could perform the job with the aid of an interpreter provided by the agency.
 
 
 31
 In evaluating the actions of the defendants, the expense necessarily involved in providing the reader sought by Coleman for the job of research analyst cannot be considered irrelevant. It must be remembered that the facts do not reveal any general refusal by the defendants to hire blind persons or to provide readers. In fact, Coleman had been satisfactorily employed by the agency for more than two years, during which time he was provided at least a part-time reader. The undisputed facts indicate that the defendants were fully familiar with Coleman and the manner in which he had performed the job of law clerk, that Coleman's application was individually considered and that because of the nature of the duties of a research analyst, Coleman's inability to read, among other things, rendered him less qualified to perform that job than the person ultimately appointed. Under the circumstances of this case, the employment decision reached by the defendants was rationally based upon all of the relevant factors and was not a clear error of judgment. Consequently, we agree with the District Court that the actions of the defendants were not arbitrary or capricious.
 
 
 32
 For the foregoing reasons, we find that the entry of summary judgment in behalf of the defendants was proper. Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 *
 Of the Northern, Eastern and Western Districts of Oklahoma, sitting by Designation