Paul YAKIN, Plaintiff,

v.

The UNIVERSITY OF ILLINOIS, CHICAGO CIRCLE CAMPUS, Dr. Richard Johnson, Dr. Jan Rocek, Dr. Roger Dominowski, Dr. I. E. Faber, Dr. Leonard Eron, Dr. Michael Levine, Dr. Phillip Ash, Dr. Benjamin Kleinmuntz, Dr. Judith Torney, Dr. Merwyn Garbarino, Budd H. Bowen, individually and/or as agents of the University of Illinois, Defendants.

No. 79 C 4070.

United States District Court,
N. D. Illinois, E. D.

Feb. 20, 1981.

Lance Haddix, Chicago, Ill., for plaintiff.

James T. Otis, Keck, Cushman, Mahin & Cate, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

This matter comes before the court on the motion of defendants Board of Trustees of the University of Illinois, Dr. Richard Johnson, Dr. Roger Dominowski, Dr. I. E. Farber, Dr. Leonard Eron, Dr. Michael Levine, Dr. Phillip Ash, Dr. Benjamin Kleinmuntz, Dr. Judith Torney, and Dr. Merwyn Garbarino to dismiss counts II and IV of the complaint. For the reasons set forth below, the motion is denied.

Count II alleges, *inter alia*, the following. In the Fall of 1974 plaintiff was selected to participate in the PhD program in psychology at the University of Illinois, Circle Campus (the "University"), which receives federal financial assistance. Plaintiff, a Mexican-American, was admitted through the Graduate Educational Opportunity Program (the "GEO Program"), an affirmative action program at the University. Each spring the entire faculty of the Department of Psychology (the "Department") evaluates the progress of its students.

In May of 1975 a majority of the Department's faculty voted to terminate plaintiff's participation in the PhD program. Plaintiff's advisor felt that plaintiff had been judged as a regular student rather than a GEO Program student and helped plaintiff draft two petitions for reconsideration of his termination. His appeal was granted and plaintiff was given two quarters to prepare for the PhD preliminary examination. Plaintiff wrote on a topic suggested by his advisor.

On or about April 25, 1976 a five member faculty committee agreed that plaintiff had failed the examination and recommended that he not be given a second chance to take it, as permitted upon recommendation of that committee. In May of 1976 the Department's faculty voted to terminate plaintiff from the PhD program, thereby denying his appeal to repeat the examination on a topic with which he was more familiar.

On or about September 22, 1976 plaintiff filed a grievance with the dean of the graduate college, Dr. Jan Rocek ("Rocek"), alleging discrimination on the basis of national origin. At a meeting held on or about October 6, 1976, at which plaintiff, Rocek, members of the Department's faculty and a member of the Educational Assistance Program were present, Rocek recommended that the Department's faculty reconsider its denial of a second examination. However, the Department's faculty reaffirmed its initial decision. On or about October 12, 1976 Rocek established a hearing panel which found that there was no evidence of discrimination and that plaintiff should be terminated without an opportunity to repeat the examination. On or about November 30, 1976 Rocek affirmed the hearing panel's findings.

On or about December 6, 1976 plaintiff appealed Rocek's decision and on or about January 31, 1977 the Associate Chancellor established a panel to conduct a de novo review. On June 20, 1977 the Associate Chancellor stated that the Department's faculty had not discriminated against plaintiff and that the standards of the GEO Program had been properly applied.

On or about June 23, 1977 plaintiff appealed to the Chancellor on the grounds of "improper procedure." This appeal was denied July 7, 1977. Plaintiff subsequently was terminated from the PhD program.

Equal Opportunity Specialist Bud Bowen ("Bowen") conducted an investigation of the grievance filed by plaintiff. In his report Bowen concluded that there was evidence that students may have been treated unfairly and that the Department's criteria were vague and subjective; that plaintiff had failed to measure favorably against "established comparative performance criteria of the department"; that prior to the 1976–77 academic year, the sole written criteria for students was that they maintain a minimum 4.00 grade point average; that prior to the 1976 termination decision, plaintiff had a 4.15 grade point average; and that the faculty applied other nonwritten criteria. Thus, plaintiff contends in count II that defendants acted arbitrarily, capriciously and without rational basis, due solely to plaintiff's national origin, in violation of title VI, 42 U.S.C. §§ 2000d—2000d–4.

Count IV also alleges, *inter alia*, the following. The "Program for Graduate Educational Opportunity," a document of the Department, states that the Department is committed to a long-range program implemented by the GEO Program for disadvantaged segments of society, including Mexican Americans; that if a student admitted to the GEO Program has a deficiency that cannot be corrected through summer school, the student's program will be organized to result in the least delay in degree progress; and that

> The faculty generally take into account the needs and goals of individual students in considering program adjustments. If special program needs exist for students admitted under the program for graduate educational opportunity, these needs will be considered as valid reasons for program adjustments or delay in progress. Course requirements, schedule guidelines and other program requirements will be administered in a flexible manner.

Thus, plaintiff contends that this document created a contract between the University and/or its departments and/or programs and plaintiff and that the University, the Department and/or the GEO Program breached this contract by not extending any of the services expressly offered to plaintiff.

Defendants move to dismiss count II because plaintiff lacks standing to sue and has failed to plead exhaustion of administrative remedies and to dismiss count IV because plaintiff has failed to plead the elements of a contract. The court does not agree.

Defendants' standing argument with respect to count II has two prongs. Defendants contend first that only a recipient of federal financial assistance or the beneficiary of any program or activity receiving such assistance can be a plaintiff and second that there is no private right of action under title VI.

■ Section 601 of title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d,[1] prohibits discrimination on the basis of race, color or national origin by a recipient of federal funds against the participants in (or beneficiaries of) any program or activity receiving federal financial assistance conducted by the recipient. *EEOC v. Southwestern Baptist Theological Seminary*, 485 F.Supp. 255, 261 (N.D.Tex.1980). The amended complaint alleges that the University receives federal financial assistance and that the University and/or its agents have violated rights secured by title VI. Since the Department and the GEO Program are part of the University, it does not matter whether the University, the Department or the GEO Program receives the federal financial assistance. *See Bob Jones University v. Johnson*, 396 F.Supp. 597, 601–604 (D.S.C.1974), *aff'd*, 529 F.2d 514 (4th Cir. 1975). Thus, count II cannot be dismissed on the ground that neither the Department, the GEO Program nor plaintiff receive federal financial assistance directly.

1. Section 601 of title VI, 42 U.S.C. § 2000d, provides:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

■ Title VI does not expressly authorize a private right of action by a person injured by a violation of section 601. Implicit in decisions of the Supreme Court is the assumption that title VI creates a private right of action for the victims of illegal discrimination. *Hills v. Gautreaux*, 425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976); *Lau v. Nichols*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974). Since neither the Supreme Court nor the Seventh Circuit have decided whether a private cause of action is implied under title VI, the court will address that issue next.

Any discussion of whether a private cause of action is implied under a statute must begin with the factors identified in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975):

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted, . . .—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

The Supreme Court has decided that each of these factors is not entitled to equal weight and has indicated that in appropriate cases it is necessary to consider only the first two or three factors. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979); *Davis v. Ball Memorial Hospital Ass'n*, No. 80–1209, slip op. at 28, 640 F.2d 30 at 44 (7th Cir. Oct. 3, 1980).

The first question, whether the statute was enacted for the benefit of a special class of which plaintiff is a member, is answered by looking to the language of the statute itself. *Cannon v. University of Chicago*, 441 U.S. 677, 689, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). Language in the statute which expressly identifies the class Congress intended to benefit and which confers a right directly on a class of persons that includes the plaintiff or creates a duty in favor of the plaintiff is generally the most accurate indicator of the propriety of implication of a cause of action. *Id.* at 690 & n.13, 99 S.Ct. at 1954 & n.13; *Simpson v. Reynolds Metals Co., Inc.*, 629 F.2d 1226, 1239 (7th Cir. 1980). The language in title VI expressly identifies the class Congress intended to benefit—persons discriminated against on the basis of race, color or national origin—and explicitly confers a benefit on such a class of which plaintiff is a member. *Simpson v. Reynolds Metals Co., Inc.*, 629 F.2d at 1240. Therefore, the first of the four factors identified in *Cort v. Ash* favors the implication of a private cause of action.

■ The second question, whether there is any indication of legislative intent either to create such a remedy or to deny one, requires consideration of legislative history. *Cannon v. University of Chicago*, 441 U.S. at 694, 99 S.Ct. at 1956. Where it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to create a private cause of action, although an explicit purpose to deny such cause of action would be controlling. *Cort v. Ash*, 422 U.S. at 82, 95 S.Ct. at 2089. As originally introduced, title VI was phrased as a directive to federal agencies engaged in the disbursement of public funds.[2] *Cannon v. University of Chicago*,

---

2. Section 601 originally stated:

TITLE VI—NONDISCRIMINATION IN FEDERALLY ASSISTED PROGRAMS

Sec. 601. Notwithstanding any provision to the contrary in any law of the United States providing or authorizing direct or indirect financial assistance for or in connection with any program or activity by way of grant, contract, loan, insurance, guaranty, or otherwise, no such law shall be interpreted as requiring that such financial assistance shall be furnished in circumstances under

441 U.S. at 693–694 n.14, 99 S.Ct. at 1955–1956 n.14. However, after Senators Keating and Ribicoff raised objections to the bill on the ground that it did not expressly authorize a private remedy for a person against whom discrimination had been practiced, the Department of Justice submitted a revised bill which contained the language now found in section 601. *Id.* Furthermore, judges, executive officials, litigants and their counsel repeatedly have assumed that title VI creates a private right of action for the victims of illegal discrimination and the absence of legislative action to change that assumption provides further evidence that Congress at least acquiesces in, and apparently affirms, that assumption. *Id.* at 702–703, 99 S.Ct. at 1960–1961; *Davis v. Ball Memorial Hospital Ass'n,* at 46. The Supreme Court has frequently accepted a history of federal court recognition of a cause of action as indicative of the propriety of its implication. *Cannon v. University of Chicago,* 441 U.S. at 706 n.40, 99 S.Ct. at 1962 n.40. Therefore, the second of the four factors identified in *Cort v. Ash* favors the implication of a private cause of action.

The third question, whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff, must be answered affirmatively.

[A] private remedy should not be implied if it would frustrate the underlying purpose of the legislative scheme. On the other hand, when that remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute. *Cannon v. University of Chicago,* 441 U.S. at 703, 99 S.Ct. at 1960 (footnote omitted).

Title VI sought to accomplish two objectives: (1) Congress wanted to avoid the use of federal resources to support discriminatory practices; and (2) it wanted to provide individual citizens effective protection against those practices. *Id.* at 704, 99 S.Ct. at 1961. The following statement regarding title IX is applicable to title VI:

The first purpose is generally served by the statutory procedure for the termination of federal financial support for institutions engaged in discriminatory practices.[3] That remedy is, however, severe and often may not provide an appropriate means of accomplishing the second purpose if merely an isolated violation has occurred. In that situation, the violation might be remedied more efficiently by an order requiring an institution to accept an applicant who had been improperly

which individuals participating in or benefiting from the program or activity are discriminated against on the ground of race, color, religion, or national origin. All contracts made in connection with any such program or activity shall contain such conditions as the President may prescribe for the purpose of assuring that there shall be no discrimination in employment by any contractor or subcontractor on the ground of race, color, religion, or national origin.

S.1731, 88th Cong., 1st Sess. (1963), *quoted in Cannon v. University of Chicago,* 441 U.S. at 693–694, 99 S.Ct. at 1956.

**3.** Section 602 of title VI, 42 U.S.C. § 2000d–1, provides in pertinent part:

Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement, but such termination or refusal shall be limited to the

particular political entity, or part thereof, or other recipient as to whom such a finding has been made and, shall be limited in its effect to the particular program, or part thereof, in which such noncompliance has been so found, or (2) by any other means authorized by law: *Provided, however,* That no such action shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means. In the case of any action terminating, or refusing to grant or continue, assistance because of failure to comply with a requirement imposed pursuant to this section, the head of the Federal department or agency shall file with the committees of the House and Senate having legislative jurisdiction over the program or activity involved a full written report of the circumstances and the grounds for such action. No such action shall become effective until thirty days have elapsed after the filing of such report.

excluded. Moreover, in that kind of situation it makes little sense to impose on an individual, whose only interest is in obtaining a benefit for herself, or on HEW, the burden of demonstrating that an institution's practices are so pervasively discriminatory that a complete cutoff of federal funding is appropriate. The award of individual relief to a private litigant who has prosecuted her own suit is not only sensible but is also fully consistent with—and in some cases even necessary to—the orderly enforcement of the statute. *Id.* at 705–706, 99 S.Ct. at 1961–1962 (footnotes omitted).

Therefore, the third of the four factors identified in *Cort v. Ash* favors the implication of a private cause of action.

The final question, whether implying a federal remedy is inappropriate because the subject matter involves an area basically of concern to the states, supports the implication of a private federal remedy. It is the federal government and the federal courts which primarily protect citizens against discrimination on the basis of race, color or national origin. *Cannon v. University of Chicago,* 441 U.S. at 708, 99 S.Ct. at 1963. Moreover, it is the expenditure of federal funds which provides the justification for this particular statutory prohibition. *Id.* at 708–709, 99 S.Ct. at 1963–1964. Therefore, the fourth of the four factors identified in *Cort v. Ash* favors the implication of a private cause of action.

■ After considering the four factors enunciated in *Cort v. Ash,* the court concludes that a private right of action can be implied under title VI. Where a private right of action can be implied, the individual complainant need not exhaust his administrative remedies before bringing suit. *Cannon v. University of Chicago,* 441 U.S. at 707 n.41, 99 S.Ct. at 1962 n.41. Therefore, with respect to count II of the complaint, the motion to dismiss is denied.

■ With respect to count IV of the complaint, defendants contend that count IV fails to state a claim upon which relief can be granted because plaintiff has failed to allege the elements necessary for establishment of a contractual relationship and because plaintiff has failed to allege a breach for which he is entitled to reinstatement to the PhD program. A motion to dismiss for failure to state a claim for relief under rule 12(b)(6), Fed.R.Civ.P., goes to the sufficiency of the pleading under rule 8(a)(2), Fed.R. Civ.P.[4] Wright & Miller, Federal Practice & Procedure: Civil § 1363, at 656 (1969). All of the allegations of the complaint must be accepted as true. *Diamond v. United States,* 649 F.2d 496 (7th Cir. 1981).

■ In *Steinberg v. Chicago Medical School,* 69 Ill.2d 320, 13 Ill.Dec. 699, 704, 371 N.E.2d 634, 639 (1977), it was alleged that Steinberg applied to Chicago Medical School and paid the $15 fee; that Chicago Medical School, through its brochure, described the criteria to be employed in evaluating applications, but failed to appraise Steinberg's application on the stated criteria; and that Chicago Medical School evaluated applications according to monetary contributions made on behalf of those seeking admission. Steinberg argued that the brochure describing the criteria employed in evaluating applications constituted an invitation for an offer to apply, that the filing of an application constituted an offer to have his credentials appraised under the terms described by Chicago Medical School, and that voluntary reception constituted an acceptance. The Illinois Supreme Court held that the allegations stated a cause of action for breach of contract. *Id.* 13 Ill.Dec. at 704, 371 N.E.2d at 639.

■ Thus, plaintiff's allegations that the document entitled "Program for Graduate Educational Opportunity" created a contract between him and the University, the Department and/or the GEO Program and

---

**4.** Rule 8(a)(2), Fed.R.Civ.P., provides in pertinent part:

A pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief ....

that the latter breached the contract by not extending to plaintiff any of the services described in that document are sufficient to state a claim upon which relief can be granted. Furthermore, it need not appear that plaintiff can obtain the particular relief prayed for, as long as the court can ascertain that some relief may be granted. Wright & Miller, Federal Practice & Procedure: Civil § 1357, at 602 (1969). Therefore, with respect to count IV of the complaint, the motion to dismiss is denied.

Accordingly, the motion of defendants Board of Trustees of the University of Illinois, Dr. Richard Johnson, Dr. Roger Dominowski, Dr. I. E. Farber, Dr. Leonard Eron, Dr. Michael Levine, Dr. Phillip Ash, Dr. Benjamin Kleinmuntz, Dr. Judith Torney, and Dr. Merwyn Garbarino to dismiss is denied.

It is so ordered.