Patrick E. SMITH, Jr., Plaintiff,

v.

UNITED STATES POSTAL
SERVICE, Defendant.

Civ. A. No. 82–60328.

United States District Court,
E.D. Michigan, S.D.

Sept. 16, 1983.

**1416**

Janet M. Tooley, Detroit, Mich., for plaintiff.

Francis L. Zebot, Asst. U.S. Atty., Detroit, Mich., Sherry A. Cagnoli, Kevin B. Rachel, U.S. Postal Service, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

The principle question in this case is whether or not a private civil action for employment discrimination on the basis of handicap can be maintained against the United States Postal Service, a quasi-executive agency, under 29 U.S.C. § 794 (the Rehabilitation Act).

### FACTS

The facts in this case are uncontroverted. Plaintiff decided in 1979 that he wanted to be a mailman. To that end, he took the Civil Service Examination, which he passed, and a physical examination, which he also passed. He was then hired as a mail handler. However, before he could begin work, the doctor who had conducted the physical exam informed the Postal Service that plaintiff had filed a worker's compensation claim. The Postal Service thereupon withdrew its offer of employment and plaintiff was never able to assume the job he had sought. These events all transpired prior to December of 1979.

On October 15, 1981, the Michigan State Bureau of Worker's Disability Compensation conducted a hearing concerning plaintiff's worker's compensation claim against his previous employer. During the course of this hearing plaintiff learned for the first time that his offer of employment from the Postal Service had been withdrawn due to his filing of this claim.

In October of 1982, plaintiff brought this action in two counts, alleging a violation of the Rehabilitation Act and a violation of his equal protection and due process rights under the Fifth Amendment of the United States Constitution.

The case is before the court on defendant's motion for dismissal or in the alternative, for summary judgment.

## THE REHABILITATION ACT

In 1978, Congress amended § 794 of Title 29, the Rehabilitation Act, to read as follows:

> No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal assistance *or under any program or activity conducted by any Executive agency or by the United States Postal Service.*

The highlighted portion of this provision was added by the 1978 amendments to the Act. In addition, Congress in 1978 enacted § 794a of the Act, which provides in part:

> (a)(1) The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964, including the application of sections 706(f) through 706(k) shall be available, with respect to *any complaint under section 791 of this title, to any employee or applicant for employment* aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint...
>
> (2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act *by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.* (emphasis added)

Section 791 of the Act, identified in § 794a(a)(1), addresses the employment of handicapped persons by the federal government. Subsection (b) is of particular interest to this litigation. It requires each federal executive agency and federal instrumentality, including the Postal Service, to adopt an affirmative action plan for the hiring, placement, and advancement of handicapped individuals. The Civil Service Commission was originally empowered in 1973 to oversee the promulgation and operation of these affirmative action programs. That function was transferred in 1978 to the Equal Employment Opportunity Commission, the agency charged with the administration of Title VII, *see* section 4 of the 1978 Reorganization Plan No. 1, 43 Fed. Reg. 19,807.

While § 791 does not by express terms proscribe employment discrimination against handicapped individuals by the federal government, regulations adopted pursuant to § 791 do in fact prohibit such discrimination, 29 C.F.R. § 1613.703 (1982).[1] In addition, these regulations direct aggrieved individuals to pursue the administrative remedies available under § 717 of Title VII, 42 U.S.C. § 2000e–16, when they feel that they have been discriminated against by a federal agency on the basis of handicap, 29 C.F.R. § 1613.708. Thus, handicapped persons are afforded the same protection against employment discrimination by the federal government under § 791 of the Rehabilitation Act as are members of the classes protected by § 717 of Title VII, which prohibits discrimination on the basis of race, religion, national origin, and gender.

The regulations adopted pursuant to § 717 set forth extensive administrative procedures for the investigation and resolution of complaints of employment discrimination brought against a federal agency, 29 C.F.R. §§ 1613.213–1613.271. The governing statute also provides complainants with the right to file a civil action in district court within 30 days of the receipt of notice of final action taken by the agency or by the EEOC, or within 180 days after the

---

1. That section read as follows:
 General Policy
 Agencies shall give full consideration to the hiring, placement, and advancement of qualified mentally and physically handicapped persons. The Federal Government shall become a model employer of handicapped individuals. *An agency shall not discriminate against a qualified physically or mentally handicapped person.* (emphasis added).

filing of a complaint if no action is taken, 42 U.S.C. § 2000e–16(c).

■ It is well settled that exhaustion of the administrative remedies is a condition precedent to the initiation of a civil action in federal court under Title VII, *Brown v. G.S.A.,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *McKenzie v. Calloway,* 456 F.Supp. 590, 605–06 (E.D.Mich. 1978), aff'd, 625 F.2d 754 (6th Cir.1980). By implication, an action brought against the federal government for employment discrimination under § 791 and its attendant regulations must also be preceded by resort to administrative remedies. Plaintiff in this case has failed to resort to these procedures, and in any event, his action is now barred by the period of limitations established by § 2000e–16(c).

Plaintiff maintains, however, that this action is brought not under § 791, but under § 794, and therefore the exhaustion requirements and period of limitations do not apply to this case. The question presented then, is whether or not a private action can be maintained against a federal instrumentality under § 794 for employment discrimination on the basis of handicap.

Prior to the adoption of the 1978 amendments to the Rehabilitation Act, the Tenth Circuit had squarely faced this question and answered it in the negative, *Coleman v. Darden,* 595 F.2d 533, 538–39 (10th Cir. 1979). The court concluded that a federal agency could not be construed as a recipient of federal financial assistance and thus fall subject to the prohibition against discrimination on the basis of handicap.

The 1978 amendments to the Act, however, have extended the prohibition against handicap discrimination to the federal agencies, and to the Postal Service in particular. Furthermore, § 794a provides that the remedies available under Title VI of the 1964 Civil Rights Act are to be made available to persons asserting violations of § 794.

■ Title VI, unlike Title VII, does not provide for an express private right of action. The courts have consistently read an implied private right of action into Title VI,

however, *see e.g. Drayden v. Needville Ind. School Dist.,* 642 F.2d 129 (5th Cir.1981); *Yakin v. Univ. of Illinois,* 508 F.Supp. 848 (N.D.Ill.1981). Furthermore, every Court of Appeals that had addressed the issue since the adoption of § 794 has concluded that a private right of action can be maintained by a handicapped person who seeks participation in a program operated by a recipient of federal funds, *see, e.g. Miener v. State of Missouri,* 673 F.2d 969 (8th Cir. 1982). Finally, exhaustion of administrative procedures is not a necessary prerequisite to maintaining a private action under § 794, *Kling v. County of Los Angeles,* 633 F.2d 876 (9th Cir.1980).

■ The courts which have found an implied private right of action under § 794 have done so in the context of lawsuits brought against recipients of federal financial assistance, however, and not against federal agencies or other instrumentalities. This fact is not a mere fortuity. Any implied right of action which arose under § 794 prior to the adoption of § 794a must now be interpreted in light of the express remedies created by the latter statute, *cf. Miener, supra,* 673 F.2d at 274. Section 794a poses two distinct impediments to the maintenance of the current action.

■ First, that provision states that the remedies available under Title VI are available "to any person aggrieved by any act or failure to act by *any recipient of Federal assistance or Federal provider of such assistance* under section 794 of this title." This language parallels the additions to § 794 enacted by Congress in 1978, with the exception that the Postal Service, which is specifically included in amended § 794, is excluded from § 794a. Although the Postal Service is commanded by § 794 not to discriminate on the basis of handicap, the private remedies of Title VI for such discrimination are not authorized against the Postal Service by § 794a(a). Congress thus has established a discretely tailored set of procedural rules. For claims alleging employment discrimination on the basis of handicap against the Postal Service, the Title VII remedies and procedures should be

followed. For claims alleging handicap discrimination on the part of recipients or providers of Federal assistance, Title VI remedies and procedures should be followed. The Postal Service is neither a recipient of federal financial assistance as that term is contemplated by § 794, *cf. Coleman v. Darden, supra,* nor is it a provider of federal financial assistance to institutions outside of the federal government. Thus, the Title VI remedies (and the implied private right of action that is modified by § 794a) that are available against recipients of federal assistance and the providers of that assistance are not available against the Postal Service.

Second, the remedies that are available under Title VI explicitly exclude redress for *employment* discrimination. Section 604 of Title VI provides:

> Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.

42 U.S.C. § 2000d–3.

■ With respect to the instant action, the question is whether § 604 creates a limitation on the standing of a handicapped person to bring a civil action against a federal instrumentality alleging employment discrimination. The Courts of Appeal that have addressed this issue in the context of claims brought against recipients of federal funds have concluded that the same restriction that applies against the mainte-

nance of an employment discrimination suit under Title VI is applied to actions brought by handicapped persons under § 794 of the Rehabilitation Act, *Simon v. St. Louis County,* 656 F.2d 316 (8th Cir.1981), *cert. denied,* 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982); *Simpson v. Reynolds Metals Co.,* 629 F.2d 1226 (7th Cir.1980); *Carmi v. Metropolitan St. Louis Sewer Dist.,* 620 F.2d 672 (8th Cir.1980); *Trageser v. Libbie Rehab. Center, Inc.,* 590 F.2d 87 (4th Cir.1979). Thus, unless the program from which plaintiff has been denied employment receives federal funds, and a primary objective of the dispersal of such funds was to create employment in that program, plaintiff would not have standing under § 794 to sue a recipient of federal funds.

■ If such a result obtains with respect to lawsuits brought against the recipients of federal funds, who are not subject to a statutory prohibition against employment discrimination on the basis of handicap, it would apply with even greater force in a case such as this where a federal agency or the Postal Service is the defendant. The latter may not discriminate in their employment practices against qualified handicapped persons, and such persons are protected by the procedures available under § 717 of Title VII, 42 U.S.C. § 2000e–16, when they have reason to believe that discriminatory action has occurred.

■ For the foregoing reasons, the court holds that a private action for employment discrimination can not be brought against the Postal Service under § 794 of the Rehabilitation Act.[2]

---

**2.** The precise holding of this case is apparently at odds with the case of *Prewitt v. United States Postal Service,* 662 F.2d 292 (5th Cir. 1982). The Fifth Circuit in *Prewitt* concluded that "by its 1978 amendments to the Rehabilitation Act, Congress clearly recognized both in section 501 (29 U.S.C. § 791) and in section 504 (§ 794) that individuals now have a private cause of action to obtain relief for handicap discrimination on the part of the federal government and federal agencies," *id.* at 304. The *Prewitt* court reasoned that "when there are two acts upon the same subject, the rule is to give effect to both if possible," *id.*

We believe that sections 791 and 794 do not address the same subject. Section 791 specifically addresses the employment of handicapped persons in the federal government. Section 794 is a broader provision, which prohibits discrimination against the handicapped by recipients of federal financial assistance and by the executive branch itself. However, § 794a indicates, according to our analysis, that Congress has carved out the area of discrimination in employment from the general prohibition of § 794 and placed it within the exclusive scope of § 791, at least, for purposes

## TOLLING OF THE LIMITATIONS PERIOD

 Plaintiff correctly points out that the limitations period of Title VII, which is applicable to his employment discrimination claim in this case, is not a jurisdictional bar to the maintenance of this suit. Rather, it is similar to a statute of limitations, which is subject to the equitable principles of waiver, estoppel, and equitable tolling, *Zipes v. T.W.A.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). The applicable regulations provide that an agency before whom a complaint of employment discrimination is brought "shall extend the time limits in (§ 1613.214)" for three reasons:

1) When the complainant shows that he was not notified of the time limits and was not otherwise aware of them,

2) when he was prevented by circumstances beyond his control from submitting the matter with the time limits, or

3) for other reasons considered sufficient by the agency.

29 C.F.R. § 1613.214(a)(4).

Plaintiff has yet to seek such an extension of the time limits for the filing of an administrative complaint. Even assuming that plaintiff did not know of the reason for the Postal Service's refusal to hire him until October 15, 1980, as is indicated in the plaintiff's affidavit, he could have filed a complaint at that time and requested that the filing deadline be extended by the Postal Service. This he did not do.

Plaintiff contends that an evidentiary hearing is necessary in this case in order to determine whether or not he knew of the existence of the time limitations for the filing of this action. In *Oaxaca v. Roscoe,* 641 F.2d 386 (5th Cir.1981), the Court of Appeals reversed the district court's dismissal of plaintiff's Title VII claim for failure to comply with the limitations period. The court remanded the case in order that the district court could hold an evidentiary hearing to determine whether or not plaintiff was aware of the filing requirements established by Title VII, *id.* at 391.

While the holding *Oaxaca* might lend support to plaintiff's contention that he is entitled to an evidentiary hearing on the issue of his knowledge of the filing deadlines, the court believes that the law in the Sixth Circuit does not go as far as that case. The courts in this circuit have generally concluded that, in order for the filing deadline of a Title VII claim to be tolled, the defendant must have somehow mislead the plaintiff as to the facts supporting a claim for employment discrimination, or with regard to the applicable law.

In this regard, the Court of Appeals has recently stated:

Appellants have not claimed that Chrysler concealed relevant facts or that the corporation's actions unfairly prevented them from asserting their federal statutory rights. Accordingly, there is no possibility that Chrysler's conduct tolled the applicable statute of limitations. *See, e.g. Zipes v. T.W.A.,* 455 U.S. 385 [102 S.Ct. 1127, 71 L.Ed.2d 234] (1982).

*E.E.O.C. v. Chrysler Corp.,* 683 F.2d 146, 149, n. 1 (6th Cir.1982).

In this case, plaintiff argues that he was not aware of the filing deadline for a claim alleging employment discrimination, nor was he even aware until October 15, 1981 that his application for employment had

---

of this opinion, when the alleged discriminator is a branch of the federal government. For this reason, we decline to follow the reasoning of the *Prewitt* court. Conspicuous by its absence from the *Prewitt* opinion is any reference to the language of § 794a(a)(2) which limits the remedies under § 794 to those available under Title VI, nor a citation to any of the case law which has consistently held that a private action for employment discrimination is not available under § 794.

Finally, even if this court were to follow the holding of the *Prewitt* court, plaintiff in this case would still be subject to dismissal. The *Prewitt* court concluded, erroneously in our view, that exhaustion of administrative remedies was required prior to proceeding under § 794, in order to preserve symmetry of remedies under sections 791 and 794, 662 F.2d at 304. As the clear language of § 794a indicates, the remedies available under § 791 are different from those available under § 794. Were we to follow *Prewitt,* however, plaintiff's claims would be dismissed in this case for failing to exhaust his administrative remedies under § 794.

been denied because he had a pending worker's compensation claim. His argument is that, as a healthy white male, he believed that the reasons for the Postal Service's withdrawal of its offer of employment were not discriminatory. He does not allege that the defendant mislead him in any way concerning the facts underlying his present claim, but rather, that he was not fully informed until October of 1981.

This is therefore not a case like *Jones v. Cassens Transport,* 538 F.Supp. 929 (E.D. Mich.1982), in which the court found the criteria justifying the application of equitable estoppel to have been satisfied. The court concluded in that case:

> If there can be a case in which equity requires relief from the filing requirement, this is one. As is fully discussed below, both defendants herein pursued a course of secrecy and concealment in their dealings with the plaintiffs; and plaintiffs each testified that they were told by EEOC personnel that the EEOC could afford them no relief against the union when they filed their charges against the employer. They were misadvised (either willfully or inadvertently) by every source of representation with which they consulted until they reached the judicial process, and will not be penalized here by a technical requirement.

*Id.* at 932.

In this case, plaintiff was never mislead by the Postal Service. Rather, he is alleging that, at the worst, defendant never informed him of the reason for the withdrawal of the offer of employment. Plaintiff apparently never asked for this reason. This case is therefore much closer to the case of *Graves v. University of Michigan,* 553 F.Supp. 532 (E.D.Mich.1982) in which the court concluded that the defendants, while failing to inform plaintiff of facts which might have given rise to an employment discrimination claim, never sought to mislead her, *id.* at 535. The court concluded that even if the limitations period did not begin to run until plaintiff learned of the facts giving rise to her Title VII claim, her failure to invoke the administrative process

within the applicable period commencing at that time resulted in the dismissal of her action, *id.*

Finally, it should be noted that, even if the very accommodating *Oaxaca* standard was applied in this case, the court feels that there still exists insufficient reason to toll the limitations period in this case. In *Oaxaca,* the court defined the issue on remand as whether or not plaintiff personally was aware of the filing requirements of Title VII. Although the opinion is not explicit on this point, it appears that plaintiff himself conducted the initial investigations into the facts giving rise to his claim, and made the initial contact with the EEOC counselor. There was no indication that he was represented by counsel until he filed his untimely civil action in federal court. By contrast, the record in this case indicates that plaintiff was represented by his present counsel on October 15, 1981, when he first learned of the reason for his failure to obtain employment with the Postal Service. Even if a layman can not be charged with constructive knowledge of the filing requirements of employment discrimination actions under federal law, certainly an attorney who handles employment cases must be. Yet plaintiff never filed an administrative complaint with the Postal Service, seeking an extension of the filing deadline under 29 C.F.R. § 613.214(a)(4). Further, plaintiff did not file the present action until October 5, 1982, almost a full year after he and his attorneys had become aware of the facts giving rise to this lawsuit, and almost two years since the occurrence of the allegedly discriminatory event. Under these circumstances the court concludes that equitable tolling should not be applied to prevent the operation of the limitations period.

THE CONSTITUTIONAL CLAIMS

Count II of the complaint alleges violations of plaintiff's equal protection and due process rights. In *Brown v. G.S.A.,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the Supreme Court held that the creation of statutory rights for redress of employment discrimination by the federal government pre-empted the availability of

a cause of action under the more general anti-discriminatory provisions of the Constitution. The Court concluded that § 717 of Title VII, with its elaborate procedural mechanisms for administrative investigation and reconciliation prior to the filing of a civil action was the exclusive means for asserting claims of employment discrimination against the federal government. For the same reason, the adoption of the Title VII remedies for persons alleging employment discrimination on the basis of handicap under § 791 of the Rehabilitation Act now provides the exclusive means for vindicating rights against federal government employers, *Shirey v. Campbell*, 24 E.P.D. ¶ 31,409 (D.D.C.1980).

For the foregoing reasons, the defendant's motion to dismiss or for summary judgment is granted.

So Ordered.