Dorothy RICE, d/b/a Little Flower Day Care Center, Plaintiff,

v.

Juan VIGIL, Secretary, New Mexico Human Services Department; Neil Goodman, Liaison Officer, New Mexico Human Services Department; Josephine Trujillo, Bernalillo County Office Manager, New Mexico Human Services Department; Dorian Dodson, District Operations Manager, New Mexico Human Services Department; Vicki Zobisch, Day Care Supervisor, Bernalillo County, Social Services Division, New Mexico Human Services Department; Michael J. Burkhart, Deputy Director, Social Services Division, New Mexico Human Services Department; Alfredo Garcia, Chief Field Services Bureau, Social Services Division, New Mexico Human Services Department; and Annette Newman, Social Worker 3, Social Services Division, New Mexico Human Services Department, Defendants.

CV No. 85–0200 HB.

United States District Court, D. New Mexico.

July 16, 1986.

Melvyn D. Baron, Melvyn D. Baron & Associates, Albuquerque, N.M., Margaret S. Wilson, Gallup, N.M., Earl J. Waits, Earl J. Waits, P.C., Albuquerque, N.M., for plaintiff.

John B. Pound, Montgomery & Andrews, P.A., Santa Fe, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

BRATTON, Chief Judge.

This matter comes before the court on cross motions for summary judgment. The court, having considered the motions, the memoranda and exhibits filed by the parties in conjunction therewith, the entire record, and consulted the applicable authorities, concludes that defendants' motion is well-taken and should be granted. Plaintiff's motion lacks merit and should be denied.

This is a civil rights action arising out of an investigation of suspected child abuse at the Little Flower Day Care Center, a day care facility licensed by the State to serve 105 full-time enrolled children. The tuition of approximately one-third of these children is paid by the State of New Mexico, pursuant to state and federal programs.

Little Flower is owned by plaintiff Dorothy Rice. On November 2, 1984, a little girl aged two and a half, complained of pain in her vaginal area. The child told her mother that her teacher had hurt her. The child was examined in the emergency room of the University of New Mexico Hospital, and the examining physician concluded that the child might have been abused at the Center. He reported his findings to the New Mexico Human Services Department (HSD). Defendant Annette Newman, a social worker employed by HSD, interviewed the child using an anatomically correct doll, and concluded that there was reason to investigate the child's allegations more thoroughly. The matter was then referred to the Bernalillo County District Attorney's office for further investigation of possible criminal activity.

On November 15, 1984, the Day Care Supervisor for Bernalillo County, HSD, received the social worker's report. She discussed the report with the Office Manager for HSD and the HSD District Operations Manager. After consulting with the Secretary of HSD and HSD's General Counsel's office, a meeting was convened on November 16, 1984. At the meeting, three HSD officials and a representative of the New Mexico Health and Environment Department (HED), decided to request formal investigation of the matter by HED, the state agency with authority to conduct such an investigation. These individuals also sent a committee to discuss the matter with plaintiff, and to provide observers at Little Flower. Three HSD employees and the HED representative went to Little Flower during the afternoon of November 16, 1984, and met with plaintiff. The committee returned to the HSD offices and discussed their visit with HSD officials. It was decided that the children for whom HSD was responsible would be temporarily placed in other child care facilities, that Title XX funds to Little Flower would be suspended pending further investigation by HED, and that the remaining parents would be notified of a potential problem at Little Flower, but would not be given specific information about the allegations. That same day, plaintiff was told about HSD's actions. Parents of the children were notified during the weekend of November 17 and 18, 1984. On November 19, 1984, plaintiff received formal notification of Little Flower's temporary suspension as a participant in the state subsidized day care program. Plaintiff was also informed of her right to request a hearing to contest her suspension.

An administrative hearing was held on November 29, 1984. Plaintiff was represented by an attorney, and presented testimony and exhibits. On December 6, 1984, Jean Rodriguez, the hearing officer, submitted a report, concluding that HSD had a strict duty to safeguard the children under its responsibility; that HSD would have been remiss in not taking the action it did pending results of the investigation by HED; that it was appropriate for HSD to take action in response to the allegations. The report also concluded that based upon the results of the HED investigation, the temporary suspension of Little Flower as a participant in the state subsidized day care program was no longer warranted or appropriate. The State subsequently paid Little Flower the fees the center would have received if the subsidized children had not been temporarily removed. HSD also issued a press release announcing Little Flower's reinstatement into the state subsidized day care program.

Plaintiff filed this action under 42 U.S.C. § 1983 against individual employees of HSD, HED and other state agencies, as well as various state officials. She alleges that she was deprived of her due process rights to a hearing, as guaranteed by the Fourteenth Amendment. Defendants urge this court to grant their motion for summary judgment, arguing that they are entitled to judgment as a matter of law because they did not deprive plaintiff of any constitutionally protected rights without due process.[1] Plaintiff opposes defendants' mo-

---

1. This court need not reach defendants' other grounds for their motion for summary judg-

tion, and moves for summary judgment on the basis of defendants' alleged violation of N.M.Stat.Ann. § 32–1–15(D) (Cum.Supp. 1985).

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must demonstrate entitlement beyond a reasonable doubt. *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33 (10th Cir.1975). Furthermore, the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion. *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir.1979). Nevertheless, "if it affirmatively appears from the pleadings, admissions or depositions, and affidavits, if any, that there is no genuine issue as to any material fact upon which the outcome of the litigation depends, the case is appropriate for disposition by summary judgment and the court should enter such judgment." *Broderick Wood Products Co. v. United States*, 195 F.2d 433, 436 (10th Cir.1952).

■ Plaintiff claims that she was deprived of her due process rights to a hearing. The requirements of due process, however, "apply only to the deprivation of those liberty and property interests encompassed by the Fifth and Fourteenth Amendments." *Coleman v. Darden*, 595 F.2d 533, 537–38 (10th Cir.), *cert. denied*, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979). Plaintiff has identified no property interest implicated by defendants' conduct. Although plaintiff argues that defendants' conduct violated her right to continued referrals, *see* Plaintiff's Reply Memorandum, 7, plaintiff has failed to establish that she had a property interest in her contracts with private clients or in her expectation of referrals. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He

must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ Plaintiff concedes that her contracts for child care with all her clients, both private and state subsidized, were terminable at will. Rice Deposition, 30–31, Exhibit A, Memorandum in Support of Defendants' Motion for Summary Judgment. Plaintiff does not, therefore, have a "legitimate claim of entitlement" to continuing to supply day care services to state subsidized children, because these contracts were terminable at will. Plaintiff does not have a property interest in her contracts for child care services with her private clients for the same reason. Furthermore, even if plaintiff had such an interest, defendants did not terminate any of the private clients' contracts. If plaintiff had suffered any harm as a result of any private clients' decisions to withdraw their children from Little Flower, that harm resulted from the independent decisions of the private clients, rather than from the actions of state officers. *See Sullivan v. New Jersey, Division of Gaming Enforcement*, 602 F.Supp. 1216, 1220 (D.N.J.1985). Finally, even if plaintiff suffered financially as a result of the temporary suspension of Title XX funds, plaintiff had no property interest in those funds because she was not the intended beneficiary of those funds. Title XX was designed to provide federal assistance to states for social services, and was intended to remedy neglect, abuse, or exploitation of children, among its many purposes. 42 U.S.C. § 1397(3). The fact that plaintiff might suffer financially as a result of the suspension of Title XX funds does not create a protected property interest in the receipt of those funds. *See Geriatrics, Inc. v. Harris*, 640 F.2d 262, 264–65 (10th Cir.), *cert. denied*, 454 U.S. 832, 102 S.Ct. 129, 70 L.Ed.2d 109 (1981).

ment, because it finds that defendants did not deprive plaintiff of any constitutionally protect-

ed rights without due process.

Plaintiff has also failed to identify a legally cognizable liberty interest of which she was deprived by defendants' conduct. In her motion for summary judgment and in her response to defendants' motion, plaintiff contends that she had a protected liberty interest in being consulted prior to a decision by HSD to suspend Title XX funds and remove state subsidized children from Little Flower. As support for this contention, plaintiff relies on N.M.Stat.Ann. § 32-1-15(D) (Cum.Supp.1985), which provides:

> Upon a determination by the director of the social services division of the human services department that any child may have suffered or is in imminent danger of suffering abuse or neglect while in the care or control of or in a child care facility or family day-care home, the human services department shall immediately notify the parents of the child and the health services division of the health and environment department. *No determination shall be made prior to consultation with the facility.*

(emphasis added). Plaintiff argues that the emphasized sentence in N.M.Stat.Ann § 32-1-15(D) gave rise to a protected liberty interest in being consulted before any course of action was taken by HSD.

Plaintiff's argument lacks merit. First, the phrase "consultation" is not defined in the statute. Defendants met with plaintiff before making the decision to transfer the state subsidized children to other day care facilities. Affidavit of Josephine Trujillo, Exhibit B, Defendants' Opposition to Plaintiff's Motion for Summary Judgment and Reply Brief in Support of Defendants' Motion. They asked plaintiff what she knew about the complaint and allegations made against Little Flower. Affidavit of Ruth Neas, Exhibit C; Rice Deposition, 56–57, Exhibit A, Defendants' Opposition to Plaintiff's Motion for Summary Judgment and Reply Brief in Support of Defendants' Motion. This meeting may have satisfied the statute's requirement of "consultation" before HSD made the decision to remove state subsidized children temporarily and suspend Title XX funds pending further investigation.

Second, even if defendants' meeting with plaintiff did not satisfy the statute's requirement of "consultation," that requirement does not give rise to a protected liberty interest. "[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona,* 461 U.S. 238, 250 n. 12, 103 S.Ct. 1741, 1748 n. 12, 75 L.Ed.2d 813 (1983). Rather, "a State creates a protected liberty interest by placing substantive limitations on official discretion." *Id.* at 249, 103 S.Ct. at 1747. In this case, the statute articulates no substantive requirements beyond the requirement of "consultation." The scope of the required consultation is not defined. The statute does not, therefore, place substantive limitations on official discretion, because it fails to specify the nature of the consultation required.

Finally, assuming that defendants failed to comply with the statutory "consultation" requirement, such failure does not, in itself, constitute a denial of due process.

> 'It is not every disregard of its regulations by a public agency that gives rise to a cause of action for violation of constitutional rights. *Rather, it is only when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions.*'

*Atencio v. Board of Education,* 658 F.2d 774, 779 (10th Cir.1981) (quoting *Bates v. Sponberg,* 547 F.2d 325 (6th Cir.1976)) (emphasis in original). Were the standard otherwise, the constitutional requirement would vary from state to state, depending on the particular procedural requirements statutorily required. *See Eguia v. Tompkins,* 756 F.2d 1130, 1137 n. 11 (5th Cir. 1985); *Bowens v. North Carolina Department of Human Resources,* 710 F.2d 1015, 1019 (4th Cir.1983). "The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in mak-

ing that choice the State does not create an independent substantive right." *Olim v. Wakinekona, supra,* at 250–51, 103 S.Ct. at 1748. Plaintiff has not suffered a deprivation of a protected liberty interest by virtue of defendants' alleged failure to follow the procedures specified under state law because, as discussed below, the procedures provided were sufficient to satisfy the requirements of due process.

Plaintiff also argues that she has suffered a deprivation of a constitutionally protected liberty interest in reputation. A deprivation of an interest in reputation may rise to the level of a liberty interest deprivation when it is combined with the deprivation of "a right or status previously recognized by state law." *Paul v. Davis,* 424 U.S. 693, 711, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976). In this case, plaintiff alleges that she suffered an injury to reputation as a result of the defendants' statements to her private and state subsidized clients, and also as a result of an article published in the November 19, 1984 issue of the *Albuquerque Tribune.* The article revealed that children who received state-funded day care had been removed from Little Flower, because officials were investigating a complaint of sexual abuse.[2] Defendants told plaintiff's clients that there had been an allegation of a violation of Title XX program approval standards and that Title XX program approval was temporarily suspended. Affidavit of Vicki Zobisch, Exhibit E, Memorandum in Support of Defendants' Motion for Summary Judgment. Parents who asked for further information were referred to plaintiff. *Id.*

Plaintiff offers three possible bases for her claim of a deprivation of a liberty interest in reputation plus another right previously recognized under state law. All of these claims lack merit. First, plaintiff argues that she has a right to be consulted before HSD temporarily suspended Title XX funds and removed state subsidized children from Little Flower. She supports her claim with the requirement of "consul-

tation" included in N.M.Stat.Ann. § 32–1–15(D) (Cum.Supp.1985). As discussed above, the statutory requirement does not give rise to a protected liberty interest. Although the "repeated use of explicitly mandatory language in connection with requiring specific substantive predicates" may support the conclusion that the State has created a protected liberty interest, *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983), the statute in this case does not make explicit any substantive requirements. The statute does require "consultation"; it also requires, however, that an HSD investigation "shall insure that immediate steps are taken to protect the health or welfare of the abused or neglected child, as well as that of any other child under the same care who may be in danger of abuse or neglect." N.M.Stat.Ann. § 32–1–15(C) (Cum.Supp. 1985). Taken as a whole, the statute imposes the substantive requirement on HSD of protecting children who may be abused or neglected. It does not confer a substantive right to consultation on the child care centers whose activities are being investigated.

■ Second, plaintiff argues that she was deprived of her freedom to contract with defendants and her private clients, as a result of the injury to her reputation. This claim also lacks merit. As discussed above, plaintiff has no "legitimate claim of entitlement" to her contracts to provide child care services, because these contracts were terminable at will. Plaintiff had no *right* to receive Title XX funds while she was under investigation for a possible violation of program approval standards. The absence of a protectible interest defeats her claim of a deprivation of a liberty interest in reputation and freedom of contract. *See Grove School v. Guardianship and Advocacy Comm.,* 596 F.Supp. 1361, 1368–69 (N.D.Ill.1984).

---

**2.** The parties have stipulated that plaintiff will not attempt to ascertain the identity of the source of the *Tribune*'s article. It cannot be assumed, therefore, that defendants were responsible for disseminating the information contained in the article.

■ Third, plaintiff argues that she was deprived of her interest in privacy as a result of defendants' activities. She contends that the information about the allegation of child abuse was disseminated to parents of children at Little Flower, in violation of the statute and her due process rights. Plaintiff's argument is unavailing. Even if the statute guaranteed plaintiff the right to be consulted before parents were informed of the investigation of suspected child abuse, "[a]llegations of a failure on the part of government officials to abide by their own assurance of confidentiality will not suffice to state a claim. Any disclosed information must itself warrant protection under constitutional standards." *Mangels v. Pena,* 789 F.2d 836, 839 (10th Cir.1986). Information warrants constitutional protection only when "a legitimate expectation exists that it will remain confidential while in the state's possession. [Citations omitted] The legitimacy of an individual's expectations depends, at least in part, upon the intimate or otherwise personal nature of the material which the state possesses." *Id.* at 7–8. Plaintiff could not have expected that the state would fail to disclose suspected child abuse to the parents of other children at Little Flower. She had, therefore, no legitimate expectation of confidentiality in that information. Her claim of a deprivation of her liberty interest in privacy is, therefore, without merit.

■ Finally, even if plaintiff had stated a claim for a deprivation of a constitutionally protected interest to support her defamation claim, the defamation claim itself is defective. "In order to state a claim for a deprivation of a liberty interest under 42 U.S.C. § 1983, the plaintiff must allege that the stigmatizing. or defamatory statement is false." *Lentsch v. Marshall,* 741 F.2d 301, 305 (10th Cir.1984). At most, the publicized statements merely disclosed the fact that Little Flower was being investigated for suspected child abuse. Plaintiff does not deny that these statements were accurate. Plaintiff has not, therefore, satisfied her burden of demonstrating the falsehood of the publicized statements.

Her claim for defamation must, therefore, fail.

Defendants have satisfied their burden of showing the absence of a genuine issue of material fact as to plaintiff's failure to identify any constitutional right impinged upon by defendants' conduct. That alone would justify granting defendants' motion for summary judgment. Even if plaintiff had succeeded in demonstrating that defendants had deprived her of a constitutionally protected liberty or property interest, however, she did not suffer a deprivation of due process because, under these circumstances, she received all the process that was due.

■ If plaintiff was deprived of a protected liberty interest, the post-deprivation hearing she received fully satisfied the requirements of due process. Where a liberty interest arising from reputational damage is implicated, the injured party is entitled to a hearing in order to "clear his name." *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 627, 51 L.Ed.2d 92 (1977). *See also Campbell v. Pierce County,* 741 F.2d 1342, 1345 (11th Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (U.S. 1985). Plaintiff had ample opportunity to clear her name at the November, 29, 1984 hearing before Jean Rodriguez. She was represented by counsel, testified, and presented evidence. Report of Administrative Fair Hearing, 3–5, Exhibit H, Memorandum in Support of Defendants' Motion for Summary Judgment. This hearing was sufficient to afford due process for a deprivation of plaintiff's liberty interest.

Plaintiff argues, however, that she was entitled to a *pre*-deprivation hearing. She bases her claim on the requirement of "consultation" in N.M.Stat.Ann. § 32–1–15(D). As discussed above, the statutory requirement of "consultation" is not synonomous with a due process pre-deprivation hearing requirement. Assuming, however, that plaintiff had a protected property interest that was implicated by defendants' conduct, she was nevertheless not entitled to a pre-deprivation hearing. "In determining

the form of hearing required, courts must balance three factors: (1) the nature of the individual interest at stake; (2) the risk of erroneous deprivation and the probable value of additional procedural safeguards; and (3) the nature of the governmental interest involved." *Rosewitz v. Latting,* 689 F.2d 175, 177 (10th Cir.1982) (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 895, 903, 47 L.Ed.2d 18 (1976)). In this case, application of the three-part test reveals that the requirements of due process were satisfied by the post-deprivation hearing plaintiff received.

First, plaintiff had an interest in retaining Title XX funds and the state subsidized children at Little Flower. She argues that she was entitled to a hearing before the funds were suspended and the children transferred to other facilities. Although the interest in one's economic benefit is important, like the interest in employment, it "does not amount to the 'brutal need' noted in *Goldberg v. Kelly,* 397 U.S. 254, 261, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970)." *Rosewitz v. Latting, supra,* at 177.

Second, the risk of erroneous deprivation and probable value of additional procedural safeguards depend on the scope of the pre-deprivation hearing. If the pre-deprivation hearing consisted of a "consultation" with plaintiff, it is unlikely that the HSD officials' decision would have been altered. When HSD employees asked plaintiff what she knew about the child and what had happened to the child, she responded "Nothing happened to the child." Rice Deposition, 57, Exhibit A, Defendants' Opposition to Plaintiff's Motion for Summary Judgment and Reply Brief in Support of Defendants' Motion. Plaintiff has not shown that further consultation with her would have been fruitful. The risk of erroneous deprivation would, therefore, have remained high, and the probable value of additional procedural safeguards would have been low. If, on the other hand, the additional procedural safeguard had been a full-scale hearing like the one held on November 29, 1984, it is entirely likely that risk of erroneous deprivation would have

been low, and the probable value to plaintiff correspondingly high. Such a hearing, however, could not take place until the completion of HED's investigation of the allegations. Under the third prong of the *Mathews v. Eldridge* test, the governmental interest in the safety of the children at Little Flower outweighed plaintiff's interest in a speedy resolution.

The governmental interest at stake in this case is the welfare of children for whom HSD was responsible. The New Mexico Children's Code states as its legislative purpose "first to provide for the care, protection and wholesome mental and physical development of children coming within the provisions of the Children's Code." N.M.Stat.Ann. § 32–1–22(A) (Cum.Supp. 1985). The Children's Code makes even more explicit HSD's interest in conducting an investigation of suspected child abuse: "Such investigation shall insure that immediate steps are taken to protect the health or welfare of the abused or neglected child, as well as that of any other child under the same care who may be in danger of abuse." N.M.Stat.Ann. § 32–1–15(C) (Cum.Supp. 1985). The governmental interest in transferring children to other day care facilities pending completion of the investigation was extremely weighty. Had the allegations of abuse proved true, to have kept the children at Little Flower while the investigation was completed and an evidentiary hearing was held could have exposed those children to further abuse. Applying the three-part test of *Mathews v. Eldridge,* the governmental interest in removing the children from a potentially dangerous situation outweighed plaintiff's interest in a predeprivation hearing and investigation. Plaintiff's constitutional right to due process was not violated by HSD's transfer of the state subsidized children to other facilities and suspension of Title XX funds pending completion of their investigation.

Now, Therefore,

IT IS BY THE COURT ORDERED that defendants' motion for summary judgment will be granted because defendants did not

deprive plaintiff of any constitutional rights without due process.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment will be denied.