ELEK, APPELLEE, *v.* HUNTINGTON NATIONAL BANK, APPELLANT.

[Cite as Elek *v.* Huntington Natl. Bank
(1991), 60 Ohio St. 3d 135.]

(No. 89-1812—Submitted November 19, 1990—Decided June 12, 1991.)

*Bates & Mong* and *James F. Mong;* and *Frederick M. Gittes,* for appellee.

*Porter, Wright, Morris & Arthur, Richard M. Markus, John M. Stephen, Bradd N. Siegel, Kevin E. Griffith* and *Larry D. Case,* for appellant.

*Spater, Gittes, Schulte & Kolman* and *Frederick M. Gittes,* urging affirmance for *amici curiae,* Ohio Chapter of the National Organization for Women, National Association for the Advancement of Colored People, Committee Against Sexual Harassment, National Association of the Physically Handicapped, Courage, Inc., National Employment Lawyers Association and National Lawyers Guild.

*Louis A. Jacobs,* urging affirmance for *amicus curiae,* State Representative Vernon L. Sykes.

*Arter & Hadden, John B. Lewis, Gregory V. Mersol* and *Margaret H. Joyce,* urging reversal for *amicus curiae,* Ohio Association of Civil Trial Attorneys.

*Baker & Hostetler, Robert F. Howarth* and *Jean M. Frazier,* urging reversal for *amici curiae,* Ohio Chamber of Commerce, Ohio Bankers Association, Ohio Restaurant Association, Gibson Greetings, Inc., Printing Industry of Ohio and Mid America Legal Foundation.

*McCutchan, Druen, Maynard, Rath & Dietrich; David L. Maynard* and *David L. White,* urging reversal for *amicus curiae,* Nationwide Mutual Insurance Company.

*Taft, Stettinius & Hollister, J. Alan Lips* and *Doreen Canton,* urging reversal for *amicus curiae,* Ohio Casualty Insurance Company.

*Taft, Stettinius & Hollister, Robert J. Townsend* and *Brian P. Gillan,* urging reversal for *amicus curiae,* Greater Cincinnati Employers Institute.

*Vorys, Sater, Seymour & Pease, Lester S. Lash* and *James P. Friedt,* urging reversal for *amicus curiae,* Ohio Manufacturers' Association.

SWEENEY, J.

I

In his complaint, appellee alleges, *inter alia,* that appellant has engaged in discriminatory practices in violation of R.C. 4112.02(A). This subsection provides:

"*It shall be an unlawful discriminatory practice: For any employer, because of the* race, color, religion, sex, national origin, *handicap,* age, or ancestry *of any person, to discharge without just cause,* to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." (Emphasis added.)

The complaint was filed as an original action in the Franklin County Common Pleas Court and brought pursuant to R.C. 4112.99. This section provides:

"Whoever violates *this chapter* is subject to a *civil action for damages,* injunctive relief, *or any other appropriate relief.*" (Emphasis added.)

A plain reading of this section yields the unmistakable conclusion that a civil action is available to remedy any form of discrimination identified in R.C. Chapter 4112. Appellant nevertheless maintains that R.C. 4112.99 merely recapitulates the specific civil remedies available under R.C. 4112.02 (N) (age discrimination), R.C. 4112.021 (D) (discrimination in affording credit) and R.C. 4112.051(A) (housing discrimination). It is therefore the contention of appellant that to interpret R.C. 4112.99 as affording a general right to a civil action in remedying all forms of discrimination would create potential conflict between R.C. 4112.99 and the specific requirements of the aforementioned sections or, at minimum, produce a redundancy between them. Appellant further maintains that had the General Assembly intended to create an independent civil action it would have done so in the same detail that it employed in the other sections.

These arguments are erroneous in numerous respects. As an initial matter, the clear and unambiguous language of the statute provides that a civil action for damages or injunctive relief is afforded by R.C. 4112.99 as an available remedy. Moreover, the section specifically states that the civil action is available to remedy any violation of *this* chapter (*i.e.,* R.C. Chapter 4112). Had the General Assembly meant to limit the availability of the civil action remedy to those instances in R.C. Chapter 4112 where it was already provided, it would have identified the section to which R.C. 4112.99 applied (*i.e.,* R.C. 4112.051[A],

4112.02[N] and 4112.021[D]). Instead its language applies to any form of discrimination addressed by R.C. Chapter 4112.

If this intent were not clear enough from the language employed in .R.C. 4112.99, resort to R.C. 1.23(A) removes all doubt. This latter section provides:

"Wherever in a penalty section reference is made to a violation of a series of sections, or of divisions or subdivisions of a section, such reference shall be construed to mean a violation of any section, division, or subdivision included in such reference."

The General Assembly was unquestionably aware of the above-referenced provision. Had it desired to provide resort to a civil action in the situations urged by appellant, it certainly would have, pursuant to R.C. 1.23(A), identified the specific subsections to which R.C. 4112.99 was to apply.

Appellant and some of the *amici* in support also contend that interpreting R.C. 4112.99 in the fashion employed by the appellate court creates a redundancy. As an initial response, such a result is not fatal to application of its terms as written. See R.C. 1.47 (rule of statutory construction specifically directs courts to give effect to an entire statute). Secondly, .the supposed redundancy does not exist in the case at bar because no other section of R.C. Chapter 4112 confers upon an alleged victim of handicap discrimination the right to pursue a civil action. Thus, there can be no conflict between R.C. 4112.99 and the provisions of a more specific subsection. In those instances where such alleged conflict may be presented, existing rules of statutory construction are available to address them (see, *e.g.,* R.C. 1.51 [special provision normally prevails over general

provision]; R.C. 1.52[A] [later enacted statute prevails over earlier one]).

Finally, R.C. Title 41 currently contains overlapping sections. While appellant contends that R.C. 4112.99 as interpreted by the appellate court would create a redundancy by providing for multiple avenues of relief for certain types of discrimination, in the area of age discrimination there already exists a redundancy between R.C. 4112.02(N) and 4101.17.

Moreover, were R.C. 4112.99 ambiguous (which it is not), it is beyond question that R.C. Chapter 4112 is remedial. See *Helmick* v. *Cincinnati Word Processing, Inc.* (1989), 45 Ohio St. 3d 131, 135, 543 N.E. 2d 1212, 1216. Accordingly, R.C. 4112.99 is to be liberally construed to promote its object (elimination of discrimination) and protect those to whom it is addressed (victims of discrimination). See R.C. 4112.08; 1.11. As such, R.C. 4112.99 must be interpreted to afford victims of handicap discrimination the right to pursue a civil action. Such an interpretation of R.C. 4112.99 was recently recognized by this court in *Hoops* v. *United Tel. Co. of Ohio* (1990), 50 Ohio St. 3d 97, 102, 553 N.E. 2d 252, 257, wherein it was observed:

"The language of R.C. 4112.02(N) and 4112.99 shows that when the legislature wants to provide legal relief (and hence a right to a jury) in addition to equitable relief, it uses specific language to do so. This language contrasts with that of 4101.17, the section applicable here."

The view that the civil action remedy provided by R.C. 4112.99 applies to the entire chapter is further supported by resort to the Legislative Service Commission Analysis of Am. H.B. No. 5, the legislation amending R.C. 4112.99. The analysis states in relevant part:

"Under existing law, a violation of

138

certain civil rights statutes (divisions (A) to (H) of Section 4112.02, and sections 4112.07 and 4112.11) constitutes a misdemeanor of the third degree. The bill will remove the criminal penalty for any such violation, and provide instead that anyone who violates *any provision* of the Civil Rights Commission Law (Chapter 4112.) would be subject to a civil action for damages, injunctive relief, or other appropriate relief (proposed section 4112.99)." (Emphasis added.) 1987 Baldwin's Ohio Legislative Service, at 5-77.

The Legislative Service Commission analysis also undermines appellant's argument that the amendment of R.C. 4112.99 merely served to remove prior criminal penalties. The previous language of R.C. 4112.99 provided:

"Whoever violates divisions (A) to (H) of section 4112.02, or sections 4112.07 or 4112.11 of the Revised Code is guilty of a misdemeanor of the third degree."

However, as noted by appellee and *amici* in support, had elimination of the criminal penalties been the sole reason for the amendment and if the right to a civil action could only be found in the specific subsections identified by appellant, one would be left to wonder why R.C. 4112.99 was not repealed altogether.

Accordingly, an aggrieved party may, pursuant to R.C. 4112.99, institute an independent civil action to seek redress for discrimination on the basis of physical disability.

## II

Appellant also contends that the trial court did not err when it granted appellant's motion to dismiss the complaint because state courts lack concurrent jurisdiction to entertain federal discrimination claims under Section 794a, Title 29, U.S. Code. In *Gulf Offshore Co.* v. *Mobil Oil Corp.* (1981), 453 U.S. 473, the United States Supreme Court addressed the issue of state court jurisdiction over claims arising under federal law. On this question, the court remarked:

"In considering the propriety of state-court jurisdiction over any particular federal claim, the Court begins with the presumption that state courts enjoy concurrent jurisdiction. See *California* v. *Arizona*, 440 U.S. 59, 66-67 (1979); *Charles Dowd Box Co.* v. *Courtney*, 368 U.S. [502], at 507-508 [1962]. Congress, however, may confine jurisdiction to the federal courts either explicitly or implicitly. Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Id.* at 478.

Clearly, there is nothing in the language of the Rehabilitation Act of 1973 (Section 794 *et seq.*, Title 29, U.S. Code) which precludes state court jurisdiction over claims arising thereunder. Secondly, appellant points to no legislative history evidencing a Congressional intent to preclude state court jurisdiction. Finally, given state court familiarity with analogous state claims, there exists no reason to believe that federal rights could not be vindicated in state courts. Moreover, there exists no greater possibility of inconsistent interpretations arising from state court judgments than would be present because of the varied interpretations of the law posed by the decisions of numerous and diverse federal courts.

While the issue of concurrent state court jurisdiction over claims arising under the Rehabilitation Act of 1973 has not been specifically decided by the United States Supreme Court, its decisions concerning analogous statutes and the language of the Act itself sup-

port the view that the state courts possess such jurisdiction. Section 794a(a)(2) provides:

"The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [Sections 2000d et seq., Title 42, U.S. Code] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title."

It has been held that a civil action may be pursued to vindicate rights arising under Title VI. *Yankin* v. *Univ. of Illinois, Chicago Circle Campus* (N.D. Ill. 1981), 508 F. Supp. 848, 853, affirmed (1985), 760 F. 2d 270. See, also, *Lau* v. *Nichols* (1974), 414 U.S. 563. The language of Section 794a(b), Title 29, U.S. Code expressly provides that similar relief may be pursued thereunder.[1]

In *Yellow Freight System, Inc.* v. *Donnelly* (1990), 494 U.S. ___, 108 L. Ed. 2d 834, 110 S. Ct. 1566, the Supreme Court determined that a claim of gender discrimination brought pursuant to Title VII of the Civil Rights Act of 1964 (Section 2000e et seq., Title 42, U.S. Code) could be resolved in state court despite the express language of Section 2000e-5 (f)(3), Title 42, U.S. Code, vesting jurisdiction in the federal district courts. On this issue, the court observed:

"Under our 'system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.' *Tafflin* [v. *Levitt*], 493 U.S., at ___, 107 L. Ed. 2d 887, 110 S. Ct. 792 [1990]; see *Gulf Offshore Co.* v. *Mobil Oil Corp.*, 453 U.S. 473, 477-478, 69 L. Ed. 2d 784, 101 S. Ct. 2870 (1981); *Claflin* v. *Houseman,* 93 U.S. 130, 136-137, 23 L. Ed. 833 (1876). To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction. *Tafflin,* 493 U.S., at ___, 107 L. Ed. 2d 887, 110 S. Ct. 792." *Id.* at ___, 108 L. Ed. 2d at 839, 110 S. Ct. at 1568.[2]

Given the foregoing disposition by the Supreme Court of the gender discrimination claim, it would be clearly anomalous to suggest that such claims are cognizable in state court but a claim predicated upon handicap discrimination in employment brought pursuant to Section 794a, Title 29, U.S. Code (which affords remedies available under Title VI) is subject to the exclusive jurisdiction of the federal courts.

We therefore conclude that state courts possess concurrent jurisdiction with federal courts to entertain discrimination claims brought pursuant to Section 794a, Title 29, U.S. Code. Accordingly, the judgment of the court of appeals is affirmed and the

---

[1] Section 794a(b) states:

"In any action or proceeding to enforce or charge a violation of a provision of this subchapter, *the court,* in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." (Emphasis added.)

[2] Similarly, the court in *Gulf Offshore Co.* v. *Mobile Oil Corp., supra,* remarked:

"It is black letter law * * * that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action. *United States* v. *Bank of New York & Trust Co.*, 296 U.S. 463, 479 (1936)." *Id.* at 479.

cause is remanded for proceedings not inconsistent with this opinion.

*Judgment affirmed and cause remanded.*

DOUGLAS, H. BROWN and RESNICK, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

MOYER, C.J., dissenting. I dissent from the judgment and opinion of the majority because I believe that the General Assembly has created in R.C. Chapter 4112 an exclusive remedy for those persons who believe their employer has discriminated against them because they are handicapped.

The General Assembly has provided that employment discrimination cases be determined expeditiously in an administrative forum that possesses considerable expertise with respect to civil rights.

Unfortunately, the judgment of the majority upsets a legislative scheme that has worked well for many years.

I would reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

WRIGHT, J., dissenting. In the face of mounting fears of a recession, the majority this day has created the "Full Employment Act for Attorneys."

Today's opinion appears to belie the notion that the judiciary is the least dangerous branch of government. The majority obviously feels a freedom virtually legislative in scope to promulgate its particular aims and values. This, of course, is "policy-based" law at its worst.

Until today, it was undisputed that R.C. Chapter 4112 contained an exclusive remedy for handicap discrimination with respect to employment.[3] The majority determines that the 1987 amendment (142 Ohio Laws, Part I, 1761 *et seq.*), which produced the disputed language in R.C. 4112.99, breached that exclusive bulwark and washed it away. In the process, the majority leaves our court system open to a tidal wave of discrimination tort cases. Further, the majority opinion guts the administrative scheme established to handle discrimination claims and discards the expertise that the Ohio Civil Rights Commission has developed over the past thirty years.[4]

The appellee, with whom the majority is in agreement, goes to some pains to stress that, where the words

---

[3] *Helmick* v. *Cincinnati Word Processing, Inc.* (1989), 45 Ohio St. 3d 131,133, 543 N.E. 2d 1212, 1215, states that "* * * claims for employment discrimination must be asserted under the aegis of R.C. Chapter 4112." "We agree with *Peterson* that R.C. Chapter 4112 does provide the exclusive remedy for pure employment discrimination claims." *Id.* at 135, 543 N.E. 2d at 1216, citing *Peterson* v. *Scott Constr. Co.* (1982), 5 Ohio App. 3d 203, 205, 5 OBR 466, 467, 451 N.E. 2d 1236, 1238.

[4] "In its 1988 Annual Report, the OCRC reported receiving 6,466 complaints, its second highest number for the last five years. * * * In the same time period, the OCRC resolved 5,142 complaints through investigation and conciliation. Of those complaints, the OCRC's investigations produced a 'no probable cause' finding with respect to 2,478 (48%) and 'administrative closures' totalling 1,354 (26%). More importantly, the OCRC's efforts to obtain voluntary compliance resulted in the resolution of another 1,310 cases (26%) through negotiated settlements or successful conciliations.

"Beyond these impressive results, the OCRC's average processing time for a charge from its initial filing is 140 days. Not only does the OCRC have a superior record

of a legislative act are clear, judicial interpretation based on legislative intent is both unnecessary and improper. While I agree with this premise, in this instance the words of the legislature are not nearly as clear as the appellee contends.

R.C. Chapter 4112 contemplates an administrative enforcement scheme for dealing with discrimination in employment due to race, color, religion, sex, national origin, handicap, age, or ancestry. These procedures remain unchanged as a result of the 1987 amendment. The bulk of R.C. Chapter 4112 contains the sundry powers granted the Ohio Civil Rights Commission ("OCRC") with respect to rule-

---

for achieving results, but it does so in a fraction of the time necessary to resolve a case through litigation.

"* * *

"The OCRC's success for the 1987-1988 year reflects its past achievements as well. During the course of the past five years, the OCRC received 29,295 charges of discrimination. In the same period the Commission closed a total of 25,564 cases (87%). * * * Of those resolved cases, the OCRC's investigations resulted in 14,489 (57%) 'no probable cause' determinations. Another 5,091 (20.7%) were administrative closures. In 5,984 (23%), the OCRC reached conciliatory agreements or negotiated settlements.

"* * *

"Removing the OCRC from the procedures required for resolving discrimination claims would not only jeopardize its statutory mandate to prevent discriminatory practices but would emasculate one of the most effective vehicles in the state for combatting discrimination. Without the efforts of the OCRC, most discrimination charges would lodge in the civil justice system as civil actions. Many plaintiffs will be lured by the prospect of potential compensatory and punitive damages and trial by jury, available in the court system, to forego the advantages of the administrative scheme offered by the OCRC. * * *

"* * * The OCRC's trained investigators are sensitive to the issues involved in discrimination cases. In the area of employment discrimination, the Commission, through skilled personnel, functions as an ombudsman. Employment disputes may be difficult to resolve because they typically involve relationships that have extended over years and that may continue into the future. * * *

"* * *

"The OCRC's administrative proceedings are less formal in nature and require neither party to retain a lawyer. * * * [T]he OCRC is not strictly bound by the rules of evidence. Its hearing officers are free to hear evidence bearing on issues in a particular case that would be inadmissible in a jury trial. Due to their reservoir of experience, the OCRC's hearing officers are astute at screening out irrelevant and less than credible evidence and weighing the remaining evidence in light of the issues to make their determinations.

"* * *

"Finally, discrimination cases are time consuming and complex. * * * [T]heir resolution does not depend upon the mere application of community standards to the facts of an isolated occurrence. Instead, the finder of fact must engage in a multiple-step analysis in which various burdens are placed on the parties at different times. * * * The resolution of discrimination cases requires knowledge of a specialized area of the law and application of that body of law to often difficult fact patterns. * * *

"The OCRC is uniquely capable of addressing the peculiar problems inherent to civil rights claims because of its informal methods of persuasion and conciliation that are not a formal part of the judicial system. It has a proven track record of success in employing such methods. Moreover, it accomplishes its tasks with a fraction of the expense associated with litigation, which would often prove staggering to both parties in a direct civil action." Brief of *amicus curiae* Ohio Association of Civil Trial Attorneys, at 5-9.

making, procedures for conciliation, the process for the issuance of complaints coupled with hearings thereon, and finally, the powers granted the OCRC for issuance of affirmative relief such as reinstatement and back pay. R.C. 4112.04 and 4112.05. Any claimant or respondent aggrieved by an OCRC final order has the right of appeal to the common pleas court. R.C. 4112.06.

The legislative history of the 1987 amendment to R.C. 4112.99 reveals two aims: abolishing the misdemeanor penalties formerly contained in R.C. 4112.99 and replacing them with an affirmation of the specific civil remedies contained throughout the chapter.

On three previous occasions, the General Assembly has augmented those specific remedies through the creation of private causes of action for discrimination.

In 1969, civil suits were allowed for "aggrieved private persons" who had been the victims of housing discrimination in violation of R.C. 4112.02(H).[5] The 1987 amendment, in addition to changing the language of R.C. 4112.99, reworded this cause of action to allow for appointment of counsel and the start of a suit without paying costs. R.C. 4112.051(A). 142 Ohio Laws, Part I, 1776.

In 1976, the legislature created a similar provision for victims of credit discrimination.[6]

Again, in 1979, the legislature extended this option of private civil action to victims of age discrimination.[7]

This history should be compelling enough argument for the proposition that the legislature would not casually — and so ambiguously when it had been so precise — create a general exception that swallows the statute. But to seal the issue there is the evidence provided by the conduct of Representative Vernon L. Sykes, author of both the 1987 amendment and an *amicus* brief in support of the plaintiff-appellee. Rep. Sykes admonishes the court to "not operate as an alternative legislature, and language which is clear on its face should not succumb to twisting by parties who naturally seek to decrease their exposure to a potent remedy."

Language "clear on its face"? Rep. Sykes apparently found R.C. 4112.99 puzzling enough to ask the Ohio Legislative Service Commission what that section meant, in 1988, a year after *his* amendment had become law.[8]

"A potent remedy"?

If R.C. 4112.99 casts such a wide shadow, why did Rep. Sykes seek to amend his own creation in 1989 to change the statute thusly:

"Sec. 4112.99. Whoever violates this chapter DIVISION (H) OF SECTION 4112.02 OF THE REVISED CODE is subject to a civil action for damages, injunctive relief, or any other appropriate relief."[9]

If R.C. 4112.99 means what Rep. Sykes *now* says it does, surely there was no need for that 1989 attempt at changing the language.

The majority construction of R.C. 4112.99 creating a private cause of action for every possible violation of R.C. Chapter 4112 directly conflicts with the other provisions of this same

---

[5] R.C. 4112.051. (133 Ohio Laws, Part II, 2181-2182.)

[6] R.C. 4112.021(D). (136 Ohio Laws, Part I, 1595-1596.)

[7] R.C. 4112.02(N). (138 Ohio Laws, Part I, 2275.)

[8] Ohio Legislative Service Commission staff attorney letter to Rep. Sykes dated September 1, 1988, in reply brief of Huntington National Bank, Appendix B.

[9] H.B. No. 592, as introduced in the 118th General Assembly, 1989-1990.

chapter, is inherently inconsistent with the purposes of the chapter, and ignores the legislative mandate contained in R.C. 1.47 that:

"(B) The entire statute is intended to be effective;

"(C) A just and reasonable result is intended;

"(D) A result feasible of execution is intended."

What truly saddens me concerning today's result is that the majority seemingly reduces to a dead letter the sound principle that the language of a statute " 'must be interpreted according to the intent and meaning, and not always according to the letter; and when the intent can be discovered, it should be followed, though such construction seem contrary to the letter of the statute.' " *State, ex rel. Belford*, v. *Hueston* (1882), 44 Ohio St. 1, 5.

Accordingly, I must vigorously dissent.

HOLMES, J., concurs in the foregoing dissenting opinion.