OHIO CIVIL RIGHTS COMMISSION et al., Appellees,

v.

PAPIERNIK, Appellant.

[Cite as *Ohio Civ. Rights Comm. v. Papiernik* (1999), 136 Ohio App.3d 233.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 98–T–0049.

Decided Dec. 6, 1999.

*Betty D. Montgomery,* Attorney General, and *Wayne D. Williams,* Assistant Attorney General, for appellee Ohio Civil Rights Commission.

*Andrew L. Margolius,* for appellee Margaret L. Grant.

*Stephen J. Chuparkoff* and *George A. Chuparkoff,* for appellant.

---

CHRISTLEY, Presiding Judge.

Appellant, Elizabeth Papiernik, appeals the judgment of the Trumbull County Court of Common Pleas entered against her and in favor of appellees, the Ohio Civil Rights Commission (the "commission") and Margaret L. Grant ("Grant"), in the amount of $11,000. Both appellees filed answer briefs. For the reasons that follow, we affirm the judgment of the trial court in part, reverse in part, and remand the cause for further proceedings consistent with this opinion.

The following pertinent facts were gleaned from the record of the jury trial below. In April 1995, Grant, who is an African–American, was looking for rental housing for herself and her son. Grant saw a phone number in an apartment house about an available unit. She called the number from her workplace. The phone number was for a business owned by appellant. Appellant is also the sole owner of the apartment building where Grant sought to rent one of the units.

According to Grant, a secretary put her inquiry through to appellant so that appellant could discuss the terms of the rental with her. Grant testified that she asked appellant about the availability of the apartment and the number of bedrooms in the apartment. According to Grant, instead of answering her substantive questions about the unit, appellant asked her a series of offensive and

discriminatory questions about whether she was "American" and whether she was "Caucasian." Grant was offended and told appellant that she could not ask those types of questions. Grant did not tell appellant that she was, in fact, black.

Grant testified that appellant responded by saying "I can rent to whoever [*sic*] I want to." Thereafter, appellant slammed down the telephone receiver, ending the call and further discussions about the terms of rental.

Grant's telephone call to appellant was witnessed by a co-worker who testified at trial. According to the co-worker, Grant became upset during the conversation and told appellant that she was "treading on thin ice." The co-worker indicated that she overheard Grant telling appellant that she was not permitted to ask those types of questions.

Another of appellant's prospective tenants, who had no prior association with Grant, also testified about a discriminatory incident with appellant. Sally Cox, a police officer, testified that she called appellant to discuss renting an apartment from her in 1995. According to Cox, she asked appellant over the telephone if she could come and look at the apartment. Appellant answered in the affirmative. Cox then asked appellant, in the event that she liked the apartment, whether it was available and open. Appellant then said "You're not black, are you?"

Cox answered in the negative, although she was, in fact, black. Appellant responded: "Well, you don't talk like you're black. I didn't think you were. But I have to ask these questions." Appellant indicated to Cox that she "didn't want to rent to those people," referring to blacks. Thereafter, Cox made an appointment with appellant at the apartment with the express purpose of telling appellant that she was, in fact, black. Cox thereafter left and did not attempt to negotiate for the rental unit.

According to appellant, she did not recall ever speaking to Grant or Cox about the apartments and she did not discriminate against African–Americans or any other group. Her apparent defense was that Grant must have spoken with someone else when she telephoned appellant's place of business. However, appellant testified that none of her employees were authorized to discuss rental terms with prospective tenants.

On August 1, 1995, Grant filed a charge of discrimination against appellant with the commission, alleging violations of R.C. 4112.02(H). After conducting an investigation, the commission determined that there was probable cause to believe that appellant had engaged in unlawful discriminatory practices. The commission thereafter issued a complaint with notice of election that the matter could be pursued either through the administrative hearing process under R.C. 4112.05 or in a civil action. On the same day that the complaint was issued, the

commission invited appellant to engage in a conciliation process to resolve the allegations.

Appellant thereafter elected to proceed in a civil action, and the Attorney General filed the present cause of action in the Trumbull County Court of Common Pleas. Grant subsequently moved to intervene in the matter pursuant to Civ.R. 24. Appellant did not oppose the motion, and Grant was given leave to intervene. In Grant's complaint, she alleged violations of both state and federal fair housing legislation, pursuant to R.C. 4112.01 *et seq.* and the Federal Fair Housing Act of 1968, Section 3601 *et seq.*, Title 42, U.S.Code (the "Fair Housing Act").

Prior to trial, Grant and the commission moved the court to bifurcate the issues of liability and attorney fees because attorney fees were required to be awarded by law under both state and federal fair housing legislation if the jury returned a verdict in their favor. The court granted the motion.

At the close of all of the evidence, appellant moved the court for a directed verdict on the grounds that the commission had failed to present evidence that it completed the informal conciliation process prior to trial. Appellant also asserted that Grant filed her state claims beyond the applicable statute of limitations. The trial court denied the motion on both grounds.

The jury was instructed in a charge that combined the nearly identical state and federal fair housing law elements in one set of instructions. The jury returned a verdict in favor of Grant and the commission in the amount of $1,000 compensatory damages and $10,000 in punitive damages.

Appellant perfected a timely appeal, asserting three assignments of error:

"[1] The trial court erred in overruling the defendants' [*sic*] motion for directed verdict where the evidence establishes that plaintiff, Ohio Civil Rights Commission, failed to engage in and complete informal methods of conference, conciliation and persuasion in an attempt to eliminate the alleged unlawful discriminatory practice.

"[2] The trial court erred in overruling the defendants' [*sic*] motion for directed verdict where the evidence establishes that plaintiff, Margaret Grant, failed to file her civil action within the limitation period defined in O.R.C. Section 4112.051.

"[3] The trial court erred in granting judgment in favor of plaintiffs against defendant where the jury verdict is manifestly against the weight of evidence."

In her first assignment of error, appellant takes issue with the commission's alleged failure to engage in and complete informal methods of conference and conciliation prior to filing its suit under state law. According to appellant,

the commission's case against her should not have proceeded to the jury because the commission failed to present evidence establishing that it met the jurisdictional prerequisite for completing informal negotiations with appellant. For the following reasons, we agree.

R.C. 4112.05 sets forth the procedure the commission must follow in issuing a complaint for unlawful discrimination.[1] In response to appellant's claim that efforts at conciliation are jurisdictional for all discrimination claims regardless of their subject matter, the commission argues that R.C. 4112.05 provides two distinct procedures to deal with state discrimination claims, one for employment discrimination and one for housing discrimination, and that efforts at conciliation are not necessary in situations involving housing discrimination.

Our reading of R.C. 4112.05, however, shows that the commission is only partially correct in arguing that employment and housing claims should be treated differently. The commission is right in so far as there is a section in R.C. 4112.05 for housing violations that gives the commission three options once it receives a complaint involving unlawful housing discrimination. Pursuant to R.C. 4112.05(B)(3):

"(a) Unless it is impracticable to do so and subject to its authority under division (B)(3)(d) of this section, the commission shall complete a preliminary investigation of a charge filed pursuant to division (B)(1) of this section that alleges an unlawful discriminatory practice described in division (H) of section 4112.02 of the Revised Code, and shall take one of the following actions, within one hundred days after the filing of the charge:

"(i) Notify the complainant and the respondent that it is not probable that an unlawful discriminatory practice * * * has been or is being engaged in and that the commission will not issue a complaint in the matter;

"(ii) Initiate a complaint and schedule it for informal methods of conference, conciliation, and persuasion;

---

1. R.C. 4112.05(B)(5) provides:

"If, after a preliminary investigation and the use of informal methods of conference, conciliation, and persuasion under this section, the commission is satisfied that any unlawful discriminatory practice will be eliminated, it may treat the charge involved as being conciliated and enter that disposition on the records of the commission. *If the commission fails to effect the elimination of an unlawful discriminatory practice by informal methods of conference, conciliation, and persuasion under this section and to obtain voluntary compliance with this chapter, the commission shall issue * * * a complaint* stating the charges involved and containing a notice of an opportunity for a hearing before the commission * * *. If a complaint pertains to an alleged unlawful discriminatory practice described in division (H) of section 4112.02 of the Revised Code, the complaint shall notify the complainant, an aggrieved person, and the respondent of the right of the complainant, an aggrieved person, or the *respondent to elect to proceed with the administrative hearing process under this section or to proceed under division (A)(2) of section 4112.051 of the Revised Code.*" (Emphasis added.)

"(iii) Initiate a complaint and refer it to the attorney general with a recommendation to seek a temporary or permanent injunction or a temporary restraining order. * * * "

On the other hand, in situations when an employment violation is alleged, the commission makes the decision as to whether there is probable cause that a violation has occurred. R.C. 4112.05(B)(2). If the commission determines that probable cause does not exist, the investigation ends, and a complaint will not be issued. R.C. 4112.05(B)(4). However, if probable cause exists, the matter must be scheduled for conciliation. Only after efforts at conciliation fail does the commission have authority to file an employment discrimination complaint, provided that the respondent is given notice of an opportunity for a hearing on the charges before the commission. R.C. 4112.05(A) and (B)(5).

Not only are efforts at conciliation necessary for the commission to pursue a formal complaint in the employment context, the Supreme Court of Ohio has held that such efforts are jurisdictional. In *State ex rel. Republic Steel Corp. v. Ohio Civ. Rights Comm.* (1975), 44 Ohio St.2d 178, 73 O.O.2d 478, 339 N.E.2d 658, the court held:

"Pursuant to R.C. 4112.05(B), a completed and unsuccessful attempt by the Ohio Civil Rights Commission to eliminate unlawful discriminatory practices by conference, conciliation or persuasion is a jurisdictional prerequisite to the issuance of a complaint by the commission, except where circumstances warrant the issuance of a complaint directly upon receipt by the commission of knowledge of the unlawful discriminatory practices alleged therein." *Id.* at syllabus.[2]

As a result of *Republic Steel* and its progeny, it is clear that the Commission *must* pursue efforts at conciliation before filing a complaint if the allegations involve employment discrimination. See, also, *State ex rel. State Farm Mut. Auto. Ins. Co. v. Ohio Civ. Rights Comm.* (1983), 6 Ohio St.3d 426, 428, 6 OBR 471, 471–472, 453 N.E.2d 601, 603.

█ Nevertheless, the commission argues that R.C. 4112.05(B)(5) does not apply to housing discrimination cases. We disagree. Despite the stated differences between housing and employment discrimination cases, R.C. Chapter 4112 contains an additional overriding mandate that must be satisfied for both housing and employment complaints before the commission can institute the formal

---

2. We would like to note that the decision in *Republic Steel* involved an interpretation of former R.C. 4112.05(B). However, former R.C. 4112.05(B) is substantially similar to its current version found in R.C. 4112.05(B)(4). *Genaro v. Cent. Transport, Inc.* (1999), 84 Ohio St.3d 293, 298, 703 N.E.2d 782, 786, fn. 3.

hearing authorized by R.C. 4112.05(B). Specifically, the commission must complete and fail at the conciliation process. R.C. 4112.05(A).[3]

The commission acknowledges that efforts at conciliation are a jurisdictional prerequisite to an employment discrimination claim. However, it offers no acceptable explanation as to why R.C. 4112.05(A) would not apply to housing claims as well.

Moreover, nothing in the three provisions found in R.C. 4112.05(B)(3) requires that a housing discrimination claim filed with the commission must be brought solely under that section. In fact, a later section, R.C. 4112.05(B)(5), states that a complaint brought pursuant to R.C. 4112.02(H) may also proceed under R.C. 4112.05(B)(5). Finally R.C. 4112.051(A)(2)(a) provides:

*"If a complaint is issued by the commission under division (B)(5) of section 4112.05 of the Revised Code for one or more alleged unlawful discriminatory practices described in division (H) of section 4112.02 of the Revised Code,* the complainant, any aggrieved person on whose behalf the complaint is issued, or the respondent may elect, following receipt of the relevant notice described in division (B)(5) of section 4112.05 of the Revised Code, to proceed with the administrative hearing process under that section or to have the alleged unlawful discriminatory practices covered by the complaint addressed in a civil action commenced in accordance with divisions (A)(1) and (2)(b) of this section.* * * "* (Emphasis added.)

When R.C. 4112.05(A), R.C. 4112.05(B)(5), and R.C. 4112.051 are read together, there is no doubt that efforts at conciliation must be attempted in the context of housing violations. Moreover, the commission cannot go forward with a hearing (or the civil action) if the conciliation process has not been completed. Otherwise, R.C. 4112.05(B)(3)(a)(ii) is meaningless in its assertion that the commission may "[i]nitiate a complaint *and* schedule it for informal methods of conference, conciliation, and persuasion." As a result, we conclude that it is a jurisdictional prerequisite that the commission pursue efforts at informal conciliation in situations involving alleged housing discrimination before a civil action may be pursued at trial. See *Harbor Park Marinas, Inc. v. Ohio Civ. Rights Comm.* (1978), 64 Ohio App.2d 120, 18 O.O.3d 93, 411 N.E.2d 811.[4]

---

**3.** R.C. 4112.05(A) states:

"The commission, as provided in this section, shall prevent any person from engaging in unlawful discriminatory practices, *provided that, before instituting the formal hearing authorized by division (B) of this section, it shall attempt, by informal methods of conference, conciliation, and persuasion, to induce compliance with this chapter."* (Emphasis added.)

**4.** The commission argues that the holding in *Harbor Park* is not supported by a reading of the current version of R.C. 4112.05. However, based on the Supreme Court of Ohio's decision in

We recognize that in some cases conciliation will be an exercise in futility and that efforts to that end would be made in vain. However, that fact does not diminish the commission's legislatively mandated obligation to pursue such a resolution, nor its concomitant duty to present evidence of its efforts at trial.

Therefore, the Commission had the burden of proof to demonstrate this jurisdictional prerequisite. A careful review of the record reveals that the commission failed to present any evidence of timely conciliation efforts during its case in chief. However, while appellant's motion for directed verdict was being argued, the commission informed the trial court that it was prepared to offer rebuttal testimony concerning conciliation. When the trial court declined to hear the testimony, the commission subsequently proffered the testimony of a housing supervisor who would have testified to the effect that appellant was uncooperative in attempts at settlement and that, as a result, the commission properly proceeded in filing a civil suit.

Even if the proffered testimony were true, *i.e.*, conciliation was attempted but failed, it was too late at that point in the proceedings to introduce evidence of conciliation. Appellant had already moved for a directed verdict based, in part, on the fact that the commission failed to attempt conciliation. Because conciliation was a jurisdictional requirement, appellant's motion for directed verdict should have been granted, and the case should not have proceeded to the jury with respect to any claims by the commission. Appellant's first assignment of error has merit.

In her second assignment of error, appellant argues that Grant failed to file her state claim in a timely manner, and, as a result, Grant's state claim should not have been presented to the jury. We disagree.[5]

Even if we were to assume for the sake of argument that appellant is correct, appellant has failed to demonstrate how she has been prejudiced by the trial court's failure to grant her motion for a directed verdict on the grounds that the applicable statute of limitations barred Grant's state claim. As previously indicated, Grant's federal and state claims were virtually identical to one another. The jury instructions simply merged them into a single claim. In addition, the jury interrogatories mirrored the instructions; hence, the jury's verdict addressed both the federal and state claims. As a result, under the two-issue rule,

---

*State ex rel. State Farm, supra,* we conclude that, because *Harbor Park* was not expressly overruled, it is still good law. Further, it is supported and consistent with the current version of R.C. 4112.05.

5. At oral argument, appellant's counsel withdrew her second assignment of error. This request, however, was not made in writing nor have we received a written request since that time. As a result, we will address the merits of appellant's second assignment.

appellant's second assignment of error does not require a reversal of the trial court's judgment.

Specifically, there is no allegation that Grant's federal claim was untimely. Indeed, there is no challenge to the jury's verdict on the federal claim, save for that contained in the third assignment of error, which we will discuss below.

Both Grant and the commission presented a joint verdict form to the jury. Appellant neither objected to the form, nor did she submit her own. The forms resulted in a joint award to both Grant and the commission. Thus, even if Grant's state claim were untimely, it would not affect the jury's verdict in favor of Grant on her federal claim.

■ Where there are two causes of action raising separate and distinct issues, and a general verdict has been returned, and the mental processes of the jury have not been tested by special interrogatories to indicate which of the issues, if any, was resolved in favor of the successful party, error with respect to one claim will be disregarded if another independent claim, free from prejudicial error, will support the verdict of the jury. *Wagner v. Roche Laboratories* (1999), 85 Ohio St.3d 457, 460, 709 N.E.2d 162, 165, quoting *H.E. Culbertson Co. v. Warden* (1931), 123 Ohio St. 297, 303, 175 N.E. 205, 207.

Moreover, the General Assembly has provided an additional cause of action separate from the filing of a complaint with the commission: R.C. 4112.99. See, also, *Elek v. Huntington Natl. Bank* (1991), 60 Ohio St.3d 135, 136, 573 N.E.2d 1056, 1057 ("a plain reading of [R.C. 4112.99] yields the unmistakable conclusion that a civil action is available to remedy any form of discrimination identified in R.C. Chapter 4112."). Appellant's second assignment of error is without merit.

■ In her third and final assignment of error, appellant contends that the jury's verdict was against the manifest weight of the evidence. It is well established that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus; *Tomcany v. Kirkpatrick* (Apr. 9, 1999), Lake App. No. 98–L–018, unreported, 1999 WL 262155, at *2.

According to appellant, the jury verdict in the case at bar was against the manifest weight of the evidence. Appellant argues that there was no evidence that she terminated the telephone call because she knew that Grant was African-American and she wanted to discriminate against Grant on that basis. According to appellant, it was just as probable that she terminated the call because she did not like Grant's voice, tone, or demeanor, or because of some other legitimate reason.

■ Initially, we note that appellant is raising this theory for the first time on appeal to this court. At trial, appellant never contended that she terminated the call because she found Grant to be rude or for some other legitimate reason. Appellant either denied ever speaking to Grant or claimed that she did not recall the conversation. Consequently, appellant cannot raise this theory for the first time on appeal in support of her argument that the jury lost its way.

■ Nevertheless, there was an abundance of competent and *direct* evidence that supported the verdict, if the evidence were found to be credible. Specifically, Grant testified that appellant not only spoke with her and lied about it, but thereafter terminated the call because Grant would not assure appellant that she was white.

■ The Fair Housing Act prohibits a person from refusing to negotiate for the sale or rental of an apartment or to otherwise make the unit unavailable because of race. Section 3604(a), Title 42, U.S.Code. See, also, *Engrao v. Century 21 Mill Creek Realty, Inc.* (Dec. 5, 1997), Trumbull App. No. 96–T–5556, unreported, at 22, 1997 WL 772935, *7.

Here, Cox's testimony, if believed, indicated that appellant "didn't want to rent to those people," referring to African–Americans. Grant's testimony further established that appellant refused to negotiate the terms of the rental with her when Grant refused to answer appellant's questions as to whether she was white. Again, we note that Cox and Grant did not know one another prior to trial and that Grant's account was also corroborated by her co-worker. All of this testimony provided competent, credible evidence upon which the jury could reasonably find that appellant refused to negotiate the terms of the rental with Grant because she suspected that Grant was black and because she did not want to rent to black people. Appellant's third assignment of error is without merit.

In light of the foregoing analysis, appellant's first assignment of error has merit, but her second and third assignments of error are without merit. The judgment of the trial court is affirmed in part and reversed in part, and the case is hereby remanded for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

NADER and WILLIAM M. O'NEILL, JJ., concur.