DECISION AND JUDGMENT ENTRY
{¶ 1} Carl Spradlin appeals his convictions and sentence for murder, aggravated burglary, and abuse of a corpse. He contends that the court denied him his right of allocution by failing to address him during sentencing and ask whether he had anything to say in mitigation. Because Crim.R. 32(A)(1) mandates that the trial court specifically address the defendant during sentencing and the court failed to comply with this requirement, we reverse Spradlin's sentence and remand on this issue. Spradlin also contends that the court erred by denying his motion for a mistrial when the State failed to produce the audio recordings of the eyewitness's prior inconsistent statements to investigators. We conclude that this evidence was not "materially exculpatory" because it would not exonerate Spradlin and because the State produced the transcript of the recordings. Since the missing tapes were only "potentially useful" and there is no evidence that the officers acted in bad faith by misplacing them, we affirm Spradlin's convictions.
 {¶ 2} A grand jury indicted Spradlin on charges of aggravated murder, murder, aggravated burglary, and abuse of a corpse arising from the death of Joseph Rennells. At the trial, the jury found that Spradlin had unlawfully entered the trailer Rennells shared with Janet Radcliff and shot Rennells several times. Spradlin then placed Rennells' body into the bed of his truck and dumped it in a creek bed. After the jury convicted Spradlin on all the charges but aggravated murder, the court sentenced Spradlin to a fifteen year term of imprisonment for the murder conviction, a nine year term for the aggravated burglary conviction, and an eleven month term for the abuse of a corpse conviction. The court ordered the sentences to be served consecutively.
 {¶ 3} Spradlin appealed his convictions and sentence, assigning the following errors:
Assignment of Error No. 1: The trial court erred to the prejudice of the Defendant in sentencing the Defendant without complying with the mandates set forth in Rule 32(A)(1) of the Ohio Rules of Criminal Procedure. The Court thereby deprived the Defendant of his right to allocution.
Assignment of Error No. 2: The trial court erred to the prejudice of the Defendant and committed an abuse of discretion when it denied the Defendant's motion for mistrial after the State's [sic] failed to produce tape recordings of a prior inconsistent statement on the part of the sole eye witness to the homicide. The court's denial of the motion for mistrial and its failure to fashion an alternative remedy denied to the Defendant his right of confrontation and his right to due process of law.
 {¶ 4} First, Spradlin argues that the court erred by failing to address him during sentencing as required by Crim.R. 32(A)(1). The State contends that the court substantially complied with the rule by asking, prior to sentencing, if there was anything "from the defendant" and, after defense counsel spoke, by asking if there was "anything further." The State argues that any error made by the court in failing to directly address Spradlin is harmless.
 {¶ 5} Crim.R. 32 states:
(A) Imposition of sentence
* * * At the time of imposing sentence, the court shall do all of the following:
(1) Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if she or she wishes to makea statement in his or her own behalf or present any information inmitigation of punishment. (Emphasis added.)
 {¶ 6} The Ohio Supreme Court has held that Crim.R. 32(A)(1) confers an absolute right of allocution. State v. Green, 90 Ohio St.3d 352, 358,2000-Ohio-182, 738 N.E.2d 1208; State v. Campbell, 90 Ohio St.3d 320,324-325, 2000-Ohio-183, 738 N.E.2d 1178. Moreover, the Ohio Supreme Court has concluded that since allocution is an absolute right, it is not subject to waiver regardless of whether the defendant fails to object at the sentencing hearing. Campbell at 324-325.
 {¶ 7} A review of the sentencing transcript reveals that the trial court failed to comply with the mandates of Crim.R. 32(A)(1). Although the court allowed defense counsel to speak on Spradlin's behalf and asked if there was "anything further" after counsel spoke, the court never personally addressed Spradlin and asked if he would like to make a statement.
 {¶ 8} The State cites State v. Reynolds, 80 Ohio St.3d 670,1998-Ohio-171, 687 N.E.2d 1358, in arguing that any error the trial court may have made is harmless. However, in Reynolds, prior to sentencing, the defendant had made an unsworn statement to the jury during the penalty phase of a capital case and had written a letter to the judge. Neither of those facts are present here.
 {¶ 9} The State also asks us to follow the holdings of State v.Mynhier (2001), 146 Ohio App.3d 217, 765 N.E.2d 917, and State v.McBride (Jan. 26, 2001), Montgomery App. No. 18016, where the First and Second District Courts of Appeal found that the trial courts' errors in failing to address the defendants during sentencing were harmless because the defendants did not inform the appellate court of what they would have said in mitigation. The First and Second Districts concluded that they had no way of determining whether the defendants were prejudiced by the trial courts' failure to comply with Crim.R. 32(A)(1).
 {¶ 10} We decline to follow Mynhier and McBride. In both State v.Castle, Lawrence App. No. 03CA24, 2004-Ohio-1992, and State v. Bellomy,
Scioto App. No. 02CA2828, 2002-Ohio-5599, we reversed the defendants' sentences based on the trial courts' violations of the defendants' right to allocution. We did not require either defendant to inform us about what he would have said at sentencing if given the opportunity. Moreover, it is unfair to judge a defendant's mitigation plea on paper when he is entitled to make that plea in person to the court that is sentencing him. Thus, we find Spradlin's first assignment of error is meritorious.
 {¶ 11} In his second assignment of error, Spradlin argues that the court abused its discretion by denying his motion for a mistrial when the State was unable to produce a tape recording of an interview with Janet Radcliff, the sole eyewitness to Rennells' death. Spradlin contends that Radcliff's initial statement was inconsistent with her later statements to investigating officers and her trial testimony and that he needed the tape recording to adequately present his defense.
 {¶ 12} In State v. Glover (1988), 35 Ohio St.3d 18, 19, 517 N.E.2d 900, the Ohio Supreme Court discussed how an appellate court should review an assignment of error concerning a motion for a mistrial. The Court wrote:
* * * In evaluating whether the declaration of a mistrial was proper in a particular case, this court has declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise. * * * This court has instead adopted an approachwhich grants great deference to the trial court's discretion in thisarea, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial. (Emphasis added.)
An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. Franklin Cty. Sheriff's Dept. v. StateEmp. Relations Bd. (1992), 63 Ohio St.3d 498, 506, 589 N.E.2d 24, 30;Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co. (1991),60 Ohio St.3d 135, 138, 573 N.E.2d 622, 624. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Jane Doe 1 (1991),57 Ohio St.3d 135, 138, 566 N.E.2d 1181, 1184, citing Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308.
 {¶ 13} Two investigating officers interviewed Janet Radcliff, Rennells' girlfriend, who was present during the shooting and the disposal of his body in the creek bed. The State provided defense counsel with a transcript of the initial interview, but the officers were unable to locate the audio recordings. Although Chief Deputy Frank Sanders testified that he turned the recordings over to the Prosecutor's Office and that the Prosecutor's Office released them to defense counsel, the State conceded that the Prosecutor's Office never received them. Moreover, Major Rick Bentley testified that he turned the tapes over to the court reporter to transcribe them and there was no record that they were ever turned over to the Prosecutor's Office.
 {¶ 14} Spradlin contends that the missing tapes contained evidence that would have been extremely valuable to his defense. Although he received a copy of the transcript, he points out that it contained numerous "inaudible" portions. Thus, he argues the best evidence of Radcliff's prior inconsistent statements to the officers was unavailable to him. Spradlin concludes that he was unable to meaningfully confront Radcliff because he did not have the recordings.
 {¶ 15} The Due Process Clause protects a criminal defendant from being convicted where the State has failed to preserve materially exculpatory evidence or in bad faith has destroyed potentially useful evidence. SeeArizona v. Youngblood (1988), 488 U.S. 51, 57-58, 109 S.Ct. 333, 337,102 L.Ed.2d 281; State v. Benton (2000), 136 Ohio App.3d 801, 805,737 N.E.2d 1046. In order to be materially exculpatory, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."California v. Trombetta (1984), 467 U.S. 479, 489, 104 S.Ct. 2528,81 L.Ed.2d 413. The defendant bears the burden of proving that lost or destroyed evidence is materially exculpatory and that the evidence cannot be obtained by other reasonable methods. See id.; Columbus v. Forest
(1987), 36 Ohio App.3d 169, 171-172, 522 N.E.2d 52.
 {¶ 16} When evidence is only potentially useful, its destruction does not violate due process unless the police acted in bad faith. Id. "The term `bad faith' generally implies something more than bad judgment or negligence. `It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'" State v. Franklin, Montgomery App. No. 19041, 2002-Ohio-2370, quoting State v. Buhrman (Sept. 12, 1997), Greene App. No. 96CA145.
 {¶ 17} The missing audio tapes are not materially exculpatory. Spradlin admitted that he shot Rennells, but contends that he acted in self-defense. Although there are clearly discrepancies between Radcliff's initial statements to the investigating officers and her later statements and trial testimony, Radcliff acknowledged at trial that she lied in her initial statements, and the transcript of the audio tapes reveals the discrepancies in sufficient detail to allow for effective cross-examination. Most significantly, Radcliff originally told the investigators that she was not sure who shot Rennells but later acknowledged that Spradlin was the shooter. Radcliff also told the investigators that she ran out of the trailer and hid in the weeds until the shooter and his companion left, but overheard them discussing where they would dump the body. She later admitted that she had accompanied Spradlin and his companion in the truck, was present when Spradlin dumped the body, and remained at Spradlin's home for several hours after the murder. Radcliff testified that she initially lied to the investigators because was afraid Spradlin would harm her and that she would be prosecuted for the murder or disposal of the body. Although the tapes may have been useful for further impeachment of Radcliff's testimony, they would not have exculpated Spradlin because they don't bolster his theory of self-defense.
 {¶ 18} Moreover, Spradlin was able to obtain evidence comparable to the audio recordings in the form of a transcript. Although there are several "inaudible" sections of the transcript, the numerous discrepancies between Radcliff's initial statements and the transcript are still apparent. And, we cannot presume that Spradlin would have been able to understand these "inaudible" portions of the recordings any better than the trained court reporter who transcribed them. Therefore, the audio recordings were not "materially exculpatory."
 {¶ 19} Because the tapes were only potentially useful, their destruction does not violate Spradlin's due process rights unless the officers acted in bad faith. The court concluded that Spradlin failed to demonstrate bad faith, and we have no basis for concluding the trial court abused its discretion in that regard. The officers were clearly negligent as there is no record of what happened to the tapes after they were transcribed and, despite several attempts to locate the recordings, they were not found. But there is no direct or circumstantial evidence that the officers acted dishonestly or purposely destroyed the tapes.
 {¶ 20} Spradlin also contends that the State compounded the loss of the audio recordings by implying to the jury that defense counsel received the tapes and was responsible for their loss. Although Chief Deputy Sanders testified that the tapes were provided to the Prosecutor's Office which gave them to defense counsel, Major Bentley later clarified that they were never actually released to the Prosecutor's Office. Other officers also testified as to their unsuccessful attempts to locate the tapes in their office. A review of the entire trial proceedings reveals that the jury understood that the officers misplaced the tapes and not defense counsel.
 {¶ 21} We conclude that the trial court did not abuse its discretion by denying Spradlin's motion for a mistrial. Spradlin's second assignment of error is overruled.
 {¶ 22} The judgment of the trial court is affirmed in part and reversed in part and this matter is remanded to the trial court for re-sentencing.
Judgment affirmed in part, reversed in part, and cause remanded.
 JUDGMENT ENTRY
It is ordered that THE JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND THE CAUSE BE REMANDED and that the Appellee and Appellant split costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. McFarland, J.: Concur in Judgment and Opinion.